2010 ME 36

**Joan M. MORIN**

v.

**MAINE EDUCATION ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued: Feb. 10, 2010.

Decided: April 22, 2010.

David G. Webbert, Esq. (orally), Elizabeth L.J. Burnett, Esq., Johnson & Webbert, LLP, Augusta, ME, Jonathan S.R. Beal, Esq., Portland, ME, for Maine Education Association.

Walter F. McKee, Esq., James A. Billings, Esq. (orally), Lipman, Katz & McKee, P.A., Augusta, ME, for Joan M. Morin.

Bruce W. Smith, Esq., Melissa A. Hewey, Esq., Drummond Woodsum & MacMahon, Portland, ME, for amicus curiae, Maine School Management Association.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

Concurrence: SILVER, J.

Dissent: ALEXANDER, J.

GORMAN, J.

[¶ 1] Maine Education Association appeals from an interlocutory order entered in the Superior Court (Kennebec County, *Jabar, J.*) disqualifying its counsel in connection with an employment discrimination action filed by Joan M. Morin. The Association contends that the court exceeded its discretion in disqualifying both counsel and their law firm. We agree, and vacate the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] The Association has employed Morin as a labor advocate, and later as a board member, since 1996. In January of 2006, she reported to her immediate supervisor that she was experiencing a hostile and discriminatory work environment. The Association hired the law firm of Bredhoff & Kaiser, P.L.L.C. to investigate Morin's complaints.

[¶ 3] Attorney Todd Edelman at Bredhoff & Kaiser conducted the investigation of Morin's allegations, which included an interview with Morin. Edelman informed Morin that he was hired by the Association to conduct an "independent investigation" and that he did not represent the Associa-

tion. Morin understood, however, that Edelman did not represent her, and in fact, Morin's own attorney was present during the entire proceeding.

[¶ 4] Morin testified that Edelman represented to her that her statements made during the interview would remain confidential and would not be shared with the Association. Morin's attorney testified that she would have been more "guarded" during the interview if she had known that Bredhoff & Kaiser might later represent the Association, and that she would not have offered her opinion to Edelman as to litigation strategy or settlement terms. Edelman testified, in contrast, that he explained to Morin that the details of his investigation would remain confidential "to the extent that's practical, given the investigation, or the extent consistent with the ... pursuit of the investigation," but that he would describe the nature of Morin's complaint to the Association. After concluding his investigation, Edelman substantiated Morin's allegations of discrimination.

[¶ 5] In 2007, Morin filed a complaint against the Association in the Superior Court alleging gender discrimination leading to a hostile work environment, retaliatory discrimination, intentional infliction of emotional distress, and negligent supervision. Two other attorneys from Bredhoff & Kaiser, W. Gary Kohlman and Joshua B. Shiffrin, represented the Association on a pro hac vice basis in the litigation instituted by Morin. Edelman had no role in representing the Association on Morin's complaint.

[¶ 6] Morin moved to disqualify Kohlman, Shiffrin, and the entire law firm of Bredhoff & Kaiser on the grounds that Edelman misrepresented his role in the investigation, and would likely be called as a witness in the litigation. Following a testimonial hearing, the court granted Morin's motion to disqualify, and denied the Association's request for further findings. See M.R. Civ. P. 52(a). The Association timely appealed.[1]

## II. DISCUSSION

[¶ 7] The Association challenges the court's disqualification of Bredhoff & Kaiser and its attorneys, Kohlman and Shiffrin.[2] Our review of orders granting or denying motions to disqualify counsel is "highly deferential," and we will not disturb an order disqualifying counsel "if the record reveals any sound basis" for the trial court's decision. *Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 27, 957 A.2d 56, 62; *Casco N. Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me.1995) (quotation marks omitted). We review the factual findings underlying such orders for clear error. *Estate of Markheim*, 2008 ME 138, ¶ 27, 957 A.2d at 62.

[¶ 8] We review such orders, however, mindful that motions for disqualification are "capable of being abused for tactical purposes, and ... justifiably wary of this type of strategic maneuvering." *Casco N. Bank*, 667 A.2d at 859. Disqualification could provide the moving party with "a brief, tactical advantage, a result that

---

1. Although interlocutory, we consider the Association's appeal on its merits pursuant to the death knell exception to the final judgment rule. *See Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶¶ 20–21, 974 A.2d 918, 926 ("[W]e have routinely held that an order granting a motion to disqualify an attorney is immediately appealable" because "disqualify-ing an attorney involves a disadvantage and expense that cannot be remedied after the conclusion of the case." (quotation marks and emphasis omitted)); *see also Hurley v. Hurley*, 2007 ME 65, ¶ 6, 923 A.2d 908, 910.

2. Attorney Edelman is no longer associated with Bredhoff & Kaiser.

would debase the rules of professional conduct and subvert, not advance, the public interest they serve." *Id.* at 859 (quotation marks omitted).

 [¶ 9] To guard against such abuse, we have said that disqualification is appropriate only when the moving party produces evidence supporting two findings. First, disqualification must "serve the purposes supporting the ethical rules." *Id.* at 859. A party moving to disqualify an attorney has the burden of demonstrating more than mere speculation that an ethics violation has occurred; she must establish in the record that continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of a particular ethical rule. *See id.* Further, even if an ethical violation is established, whether disqualification of that attorney may be imputed to the attorney's entire law firm depends on which ethical violation is found to have occurred.

 [¶ 10] Second, we require a showing that continued representation by the attorney would result in actual prejudice to the party seeking that attorney's disqualification. *See Adam v. Macdonald Page & Co.,* 644 A.2d 461, 464–65 (Me.1994). As we stated in *Adam,* courts will not assume the existence of prejudice to the moving party just by the mere fact that an ethical violation was committed, even when that ethical violation involves confidential communications. *Id.* A mere general allegation that the attorney has some confidential and relevant information he gathered in the previous relationship will not support disqualification. *See id.* Rather, the moving party must point to the specific, identifiable harm she will suffer in the litigation by opposing counsel's continued representation. Indeed, to allow disquali-

fication with proof of anything less than such actual prejudice would be to invite movants to employ this "obvious vehicle for abuse." *Id.* at 464.

 [¶ 11] Moreover, if the moving party produces evidence of both an ethical violation and actual prejudice, any court order disqualifying the attorney must include express findings of that ethical violation and resulting prejudice. In the absence of such findings, we will uphold an attorney disqualification only if both the ethical violation and the prejudice to be suffered are obvious from the record.

 [¶ 12] In the instant matter, we first address the requirement of actual prejudice. Morin generally asserted that she would have been more "guarded" during her interview with Edelman, and that she disclosed to Edelman litigation and settlement strategy that she would not otherwise have shared with him had she known that Bredhoff & Kaiser would represent the Association in subsequent litigation. As a matter of law, this evidence is insufficient to establish the actual prejudice necessary to support a disqualification order. Even when viewing the disqualification evidence in the light most favorable to Morin, as the prevailing party, *see In re Cyr,* 2005 ME 61, ¶ 16, 873 A.2d 355, 361, Morin failed to point to any particular prejudice she has suffered or will suffer and, contrary to the dissent's assertions, the court made no such finding of actual prejudice.

[¶ 13] We cannot uphold the disqualification of an attorney in the absence of any finding of actual prejudice to Morin by Bredhoff & Kaiser's representation of the Association when the prejudice she asserts is not obvious from the record.[3] Because

---

3. At oral argument, counsel for the Association acknowledged that an employer's use of

the same attorneys or law firm to both complete an internal "independent" investigation

we conclude that the record does not support a finding of actual prejudice to Morin, we need not address the sufficiency of the evidence supporting a finding that Edelman committed any ethical violation justifying disqualification, or whether any such disqualification could be imputed to the law firm of Bredhoff & Kaiser.

The entry is:

Judgment vacated and remanded for further proceedings.

SILVER, J., concurring.

[¶ 14] I concur in the result reached by the majority, but write separately because this is a much closer question than the majority suggests. In addition, my analysis of disqualification is somewhat different. I would not require both a finding of an ethical violation *and* prejudice. There are situations where either would require disqualification. I would not disqualify Bredhoff & Kaiser in this matter but it is better practice not to have the same firm perform a discrimination investigation and represent the employer in any resulting litigation. Furthermore, I would not require a court to make express findings of an ethical violation because a trial record may contain enough to show that an ethical violation occurred.

[¶ 15] As the dissent notes, "[t]he standard of review for orders disqualifying or refusing to disqualify counsel is highly deferential." *Casco N. Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me.1995); *see also Koch v. Koch Indus.*, 798 F.Supp. 1525, 1530 (D.Kan.1992) ("Within the inherent supervisory powers of the court is the discretionary authority to control attorneys."), *cited with approval in Casco N. Bank*, 667 A.2d at 859. In order to protect a client's

choice of counsel, however, *see Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 20, 957 A.2d 56, 61, disqualification of counsel must be based on evidence of an ethical violation *or* actual prejudice.

[¶ 16] The party moving for disqualification "has the burden of showing the grounds for disqualification, producing more than mere speculation and sustaining a reasonable inference of an ethical violation." *Casco N. Bank*, 667 A.2d at 859 (quotation marks omitted). In evaluating a disqualification motion, the court must do more than assume that prejudice took place. *See Hurley v. Hurley*, 2007 ME 65, ¶¶ 20–21, 923 A.2d 908, 912–13. A requirement of express findings, however, is an extension of our prior case law that infringes on the deferential standard of review, and is unnecessary in order to protect the interests at play here.

[¶ 17] An employer's use of the same law firm to both conduct internal investigations and to represent it in suits brought by employees may not be a technical violation of the ethical rules, but it is nevertheless fraught with difficulties and is not a "best practice." It is commendable that the Association hired an outside entity to investigate Morin's allegations. It would be a better practice to hire an investigator not associated with its litigation counsel.

[¶ 18] Claims of discrimination inevitably include an allegation that would require the investigator to testify in the trial of the matter, and here it will be difficult to litigate this matter without the testimony of Attorney Edelman. While Attorney Edelman's participation as a witness does not require disqualification of the firm under the Maine Rules, *see* M.R. Prof. Conduct 3.7(b); M. Bar R. 3.4(g)(1)(ii) (2008),[4]

of an employee's allegations, and to represent the employer in any subsequent litigation with that employee, should include a clear explanation to the employee of the firm's dual role.

**4.** Attorney Edelman is not licensed to practice

this approach is highly problematic in practice. In fact, the Rules previously required disqualification of a firm where an attorney would testify, but the Rule was amended to allow continued representation by the firm, based on the logic that "[i]n the absence of either prejudice or conflict, the party calling the lawyer-witness should be free to decide the question whether the value of continuing representation outweighs the risk of impeachment." M. Bar R. 3.4(j) Advisory Committee's Note to 1985 amend., Me. Rptr., 479–487 A.2d LXXXIX.[5] The Advisory Committee still viewed this situation as a detriment to the client, but chose in the amendment to allow the client to weigh the relative disadvantages. *See id.* The change was not undertaken with the goal of allowing what occurred here—intentionally creating a situation where the same firm will provide both counsel and an essential witness.

[¶ 19] The problem with the firm's actions in this case is not only that the investigating attorney is a likely witness, but also that it invites challenges such as this, which will interrupt and distract from the resolution of the case. The trial court found Attorney Edelman's role confusing at a minimum. This is not good service to a client, as it could result in expense, delay, confusion to the jury, confusion to the client, and could lead to ethical violations and actual prejudice on different facts than those present here.

[¶ 20] Because the record demonstrates no ethical violations and no prejudice to either party by Bredhoff & Kaiser's continued representation of the Association, I would vacate the order disqualifying counsel. However, the majority goes too far by requiring the trial court to make express findings of a violation and resulting prejudice before disqualifying counsel.

---

ALEXANDER, J., dissenting.

[¶ 21] I respectfully dissent. The trial court, after a contested, testimonial hearing, found that Joan Morin and her attorney were "credible" and disqualified counsel. The record before the trial court, while including disputes as to the facts, supports the conclusions that: (1) statements by the Maine Education Association's retained attorney misled Morin into believing that he was an independent investigator, conducting an impartial investigation; (2) as a result of the misleading statements, Morin disclosed to the investigator confidential information and litigation objectives that she would not have otherwise disclosed; (3) the Association's attorney disclosed the information provided by Morin and his notes of the meeting to co-counsel for the Association, violating a commitment to Morin that the information Morin provided would not be disclosed to the Association; and (4) the Association's attorney, having obtained this sensitive information, may have made himself a necessary witness in the case.

[¶ 22] Faced with this record, and its credibility determination, the Superior Court acted appropriately. We have said, on several occasions, that our review of trial court orders granting or denying motions to disqualify counsel is "highly deferential," and that we will not disturb an order disqualifying counsel "if the record reveals any sound basis" for the trial court's action. *Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 27, 957 A.2d

---

in Maine, and I make no pronouncement as to whether there has been a violation of another jurisdiction's bar rules.

5. Rule 3.4(j) became Rule 3.4(g)(1) in 1993. *See* M. Bar R. 3.4(g) Advisory Committee's Note to 1993 amend., Me. Rptr., 602–617 A.2d CXXXVI.

56, 62; *Hurley v. Hurley,* 2007 ME 65, ¶ 8, 923 A.2d 908, 910; *Casco N. Bank v. JBI Assocs.,* 667 A.2d 856, 859 (Me.1995). "Any 'doubts should be resolved in favor of disqualification.'" *Hurley,* 2007 ME 65, ¶ 8, 923 A.2d at 910 (quoting *Casco N. Bank,* 667 A.2d at 859).

[¶ 23] The trial court's findings and conclusions support the view that the Association's attorney misrepresented his role as an independent, impartial investigator in violation of M.R. Prof. Conduct 8.4(c) and M. Bar R. 3.2(f)(3) (2008). As a result of this misrepresentation, the Association's attorney obtained and turned over to co-counsel confidential information and notes about Morin's view of the facts and litigation strategy. The trial court correctly concluded that the possession of such confidential information obtained through misrepresentation by an attorney or firm representing an adverse party is grounds for disqualification. *See Estate of Markheim,* 2008 ME 138, ¶¶ 20–21, 26–29, 957 A.2d at 61–62; *Hurley,* 2007 ME 65, ¶¶ 7, 20, 923 A.2d at 910, 912.

[¶ 24] As a separate ground for disqualification, the trial court correctly concluded that the Association's attorney placed himself in a position where he may be a necessary witness at trial for either Morin or the Association. The attorney may likely be required to testify regarding statements made by Morin during his investigation. In the circumstances, M.R. Prof. Conduct 3.7(a), which will govern the trial, and M. Bar R. 3.4(g)(1)(ii) (2008), which applied when the events at issue here occurred, bar continued representation of the Association by its investigating counsel. This bar on continued representation extends to the firm because the attorney-investigator's actions were undertaken as part of the firm's representation of the Association, and the attorney will-

ingly shared the information he gained and his notes within the firm.

[¶ 25] On the record presented, with two separate grounds for disqualification demonstrated, the Superior Court had little choice but to disqualify the investigating attorney and his firm.

[¶ 26] The Court vacates the disqualification because it concludes that Morin has failed to demonstrate any prejudice to her from the actions of the Association's attorney.

[¶ 27] It is difficult to predict how improperly obtained information, given in confidence, might be used or misused at trial. For that reason, opposing counsel's possession of confidential information that may be relevant and material and that was improperly obtained from the opposing party is the basis for disqualification, without regard to prediction of how such information might be used at trial, or in trial strategy planning. Prejudice is—or should be—presumed from the possession of relevant confidential information that has been improperly obtained.

[¶ 28] As we indicated in *Hurley,* we look to the relevance of the confidential information at issue in deciding disqualification. 2007 ME 65, ¶¶ 9, 17, 923 A.2d at 910, 912. That relevant information may include facts about the case, and it may also include information, such as a person's litigation objectives or observations of a person's capacity to handle stress, that may inform an opponent's litigation strategy. *Id.; Adam v. MacDonald Page & Co.,* 644 A.2d 461, 464 (Me.1994). Here, the improperly obtained information was relevant to the facts of the case and could be used to inform the opponent's litigation strategy. With those points demonstrated, no further proof or finding of prejudice was required. The record, with the credibility determination made by the trial court, supports the trial court's findings

and conclusions and the disqualification remedy it ordered.

[¶ 29] I would affirm the disqualification order.