## 2012 ME 81

### Scott A. LIBERTY

### v.

### Jeffrey BENNETT et al.

Supreme Judicial Court of Maine.

Argued: May 10, 2012.
Decided: June 21, 2012.

---

1. The vehicle that Cason was operating, a 1966 Triumph TR4, had a registration that expired on October 31, 2009.

 

necessary to understand the unique circumstances of this appeal.

John H. Branson, Esq., Branson Law Office, P.A., Portland, for appellant Scott A. Liberty.

Martha C. Gaythwaite, Esq. (orally), and F. David Walker, IV, Esq., Friedman Gaythwaite Wolf & Leavitt, Portland, for appellee Jeffrey Bennett.

William J. Kelleher, Esq., Dubord, Bernier & Stevens, Waterville, argued, for appellant Scott A. Liberty.

Panel: ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1]   Scott A. Liberty appeals from an interlocutory order entered in the Superior Court (Cumberland County, *Marden, J.*) denying his motion to reconsider his motion to disqualify attorney Martha Gaythwaite from representing Jeffrey Bennett. Liberty contends that Gaythwaite should be disqualified because she previously represented Liberty's former attorney, David Van Dyke, in a legal malpractice action brought by Liberty.   Because Liberty has failed to demonstrate that any exception to the final judgment rule should apply to justify reaching the merits of this interlocutory appeal, we dismiss the appeal.

## I.  CASE HISTORY

[¶ 2]   This consolidated case is one of a succession of cases arising from the divorce of Liberty and Darlene Copp.  A review of three cases, including this one, is

### A.  *Copp v. Liberty*

[¶ 3]   In the highly contentious divorce proceeding, Van Dyke, then of the law firm Berman & Simmons, represented Liberty from 2000 to 2002, and Bennett of The Bennett Law Firm represented Copp.

[¶ 4]   After the parties agreed to a settlement, a divorce judgment was entered in 2001.  After the judgment was entered, Liberty filed a post-judgment motion to set aside or modify the judgment, pursuant to M.R. Civ. P. 60(b).  In support of the motion, Liberty alleged that Van Dyke had agreed to the purported settlement without his consent.  Because Liberty, by filing the post-judgment motion, put at issue attorney-client communications leading to the divorce settlement, the divorce court (*Cole, J.*) found that confidential information and work product documents that were held by Van Dyke in his representation of Liberty were no longer protected by attorney-client privilege.  During the hearing on the Rule 60(b) motion, Van Dyke testified regarding his representation of Liberty in the divorce action.  The court denied Liberty's post-judgment motion, and on Liberty's appeal, we affirmed. *See Copp v. Liberty*, Mem–05–144 (Oct. 17, 2005).

### B.  *Liberty v. Van Dyke et al.*

[¶ 5]   In 2006, Liberty filed a complaint against Van Dyke and the law firm of Berman & Simmons alleging legal malpractice in the divorce action.  Van Dyke retained Gaythwaite to represent him in the matter.  Her representation spanned two years.

[¶ 6]   To facilitate her defense of Van Dyke, Gaythwaite obtained discovery relating to Van Dyke's representation of Liberty during the divorce proceeding, in-

cluding Liberty's depositions, Van Dyke's depositions, Van Dyke's testimony from the Rule 60(b) motion hearing, Van Dyke's affidavits, Liberty's secretly recorded conversations with Van Dyke, and the Berman & Simmons case file containing Van Dyke's work product. The discovery included information that had been protected by attorney-client privilege before Liberty initiated the legal malpractice claim against Van Dyke and filed the Rule 60(b) motion in the divorce action.

[¶ 7] Ultimately, the malpractice court (*Crowley, J.*) granted Van Dyke's motion for summary judgment, and we affirmed. *See Liberty v. Van Dyke*, Mem–09–91 (May 26, 2009).

## C. *Liberty v. Bennett et al.*

[¶ 8] Liberty commenced the action now before us in 2003.[1] Liberty filed a thirteen-count complaint[2] against Bennett and the Bennett Law Firm.[3] After an extensive procedural history with Bennett represented by other counsel, Gaythwaite entered her appearance to represent Bennett on May 31, 2011.

[¶ 9] On June 14, 2011, Liberty filed a motion to disqualify Gaythwaite due to her prior representation of Van Dyke in the legal malpractice action. Liberty asserted that Gaythwaite holds confidential information, acquired during her representation of Van Dyke, that is materially related to the subject matter of the pending case between Liberty and Bennett. In response, Bennett asserted that Gaythwaite had never represented Liberty and, further, that Liberty had waived any claim to attorney-client privilege with Van Dyke when he brought the post-judgment motion and the legal malpractice action.

[¶ 10] The court (*Marden, J.*) held a hearing on the motion to disqualify. The court initially granted the motion to disqualify, finding that Liberty had waived the attorney-client privilege in the malpractice case, but stating, "the [c]ourt is concerned that somewhere out there lurks a piece of information that was not disclosed, that was not known, that arises during the course of the trial which has the effect ... of throwing the entire trial into a turmoil and create the possibility of a trial within a trial."

[¶ 11] Bennett filed a motion for reconsideration. Citing *Morin v. Maine Education Association*, 2010 ME 36, 993 A.2d 1097, Bennett asserted that Liberty must suffer "actual prejudice" as a result of Gaythwaite's continued representation of Bennett, which he had failed to show.

[¶ 12] The court granted Bennett's motion for reconsideration, and denied Liberty's motion to disqualify Gaythwaite. The court, applying the standard of proof delineated in *Morin*, found that Liberty "[had] not established the 'specific, identifiable harm' he will suffer in litigation by opposing counsel's continued representation."

[¶ 13] Liberty then moved for reconsideration, contending that the court erred in applying the actual prejudice standard. Liberty asserted that the court should have applied the standard of proof set forth in *Estate of Markheim v. Markheim*, 2008 ME 138, ¶¶ 24, 31, 957 A.2d 56, which

---

1. In 2011, this case was consolidated with Liberty's counterclaim in *Darlene Copp v. Scott A. Liberty et al.*, CV–05–00066.

2. Following the court's (*Delahanty, J.*) order dismissing several counts on Bennett's motion to dismiss, the remaining counts of the complaint are: abuse of process (Count I), assault (Count VI), intentional infliction of emotional distress (Count VII), interference with contractual relations (Count IX), negligence based on vicarious liability (Count XII), and violation of the Maine Civil Rights Act (Count XIII).

3. Currently, attorneys Elizabeth Germani and Tracy Hill of Germani, Martemucci, Riggle & Hill represent The Bennett Law Firm.

requires attorney disqualification when it can be reasonably inferred that confidential information was obtained through the attorney's prior representation in substantially related cases. Liberty also requested that the court conduct an in camera review of the confidential information in an effort to show the requisite prejudice. The court denied Liberty's request for an in camera review as untimely, and denied his motion for reconsideration.

[¶ 14] Liberty timely appealed the interlocutory order.

## II. LEGAL ANALYSIS

### A. Interlocutory Appeal

[¶ 15] Because "the final judgment rule prevents a party from appealing a trial court's decision on a motion before a final judgment has been rendered," we must first determine whether an exception to the final judgment rule permits us to reach the merits of this interlocutory appeal. *Fiber Materials, Inc. v. Subilia,* 2009 ME 71, ¶ 12, 974 A.2d 918; *see Aubry v. Town of Mount Desert,* 2010 ME 111, ¶ 4, 10 A.3d 662 ("A final judgment ... is a decision that fully decides and disposes of the entire matter pending before the court ..., leaving no questions for the future consideration and judgment of the court...."). We will dismiss an appeal sua sponte if we determine that the appeal is not "properly before us on appeal from a final judgment." *Bond v. Bond,* 2011 ME 105, ¶ 5, 30 A.3d 816; *see Aubry,* 2010 ME 111, ¶ 4, 10 A.3d 662.

[¶ 16] We will reach the merits of an interlocutory appeal from a trial court order disqualifying an attorney from representing a litigant because an improper disqualification "involves a disadvantage and expense that cannot be remedied after the conclusion of the case." *Hurley v. Hurley,* 2007 ME 65, ¶ 6, 923 A.2d 908; *see also Morin,* 2010 ME 36, ¶ 6 n. 1, 993 A.2d 1097. Generally, however, we will not undertake appellate review of an interlocutory order denying a motion to disqualify an attorney unless the court's order qualifies for an exception to the final judgment rule. *See Tungate v. MacLean-Stevens Studios, Inc.,* 1997 ME 113, ¶¶ 4–5, 695 A.2d 564; Alexander, *Maine Appellate Practice* § 304(f) at 206 (3d ed.2008); *see also, e.g., Fiber Materials, Inc.,* 2009 ME 71, ¶¶ 12–13, 974 A.2d 918; *Estate of Markheim,* 2008 ME 138, ¶ 12, 957 A.2d 56.

[¶ 17] There are two exceptions to the final judgment rule that may apply to support review on the merits of an appeal from a trial court's denial of a motion to disqualify an attorney: the death knell exception and the judicial economy exception.

[¶ 18] Under the death knell exception to the final judgment rule, an interlocutory appeal is permitted only when "substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Bruesewitz v. Grant,* 2007 ME 13, ¶ 8, 912 A.2d 1255; *Webb v. Haas,* 1999 ME 74, ¶ 5, 728 A.2d 1261. The death knell exception applies only to orders that, without interlocutory appeal, will "result in a substantial loss or sacrifice of the rights, property, or claim at issue." *Bruesewitz,* 2007 ME 13, ¶ 8, 912 A.2d 1255.

[¶ 19] The "judicial economy" exception to the final judgment rule may be difficult to quantify, but generally an interlocutory appeal is permitted only when two prerequisites are met: (1) "review of a non-final order can establish a final, or practically final, disposition of the entire litigation," and (2) "the interests of justice require that immediate review be undertaken." *Town of Otis v. Derr,* 2001 ME 151, ¶ 3, 782 A.2d 788; *Millett v. Atl. Richfield Co.,* 2000 ME 178, ¶ 16, 760 A.2d 250;

*Dep't of Human Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me.1990).

■ [¶ 20] To qualify this interlocutory appeal under the death knell exception, Liberty would have to contend that his substantial rights to keep confidential information obtained by Van Dyke in attorney-client communications will be irreparably lost if review is delayed until final judgment. Before the trial court, and before us on appeal, Liberty makes generalized allegations that Gaythwaite, who has never represented Liberty, obtained significant confidential information as a result of her prior representation of Van Dyke. However, beyond the general allegations, Liberty only proffered Gaythwaite's status, as former counsel for Van Dyke, as sufficient cause for her disqualification.

[¶ 21] If Gaythwaite is in possession of confidential material, and privilege or confidentiality was not waived as a result of the legal malpractice action or the Rule 60(b) motion,[4] Liberty, as the moving party and the appellant, had the burden to demonstrate to the trial court and to us that Gaythwaite possessed important confidential information, obtained as a result of her representation of Van Dyke, and to which the attorney-client privilege continues to apply. *See Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097. In the absence of Liberty pointing to "the specific, identifiable harm [he] will suffer in the litigation by opposing counsel's continued representation," *id.*, we conclude that he has failed to identify any "substantial rights ... [that] will be irreparably lost if review is delayed until final judgment," *Bruesewitz*, 2007 ME 13, ¶ 8, 912 A.2d 1255. The death knell exception does not apply to support reaching the merits of this appeal.

■ [¶ 22] If we are to reach the merits of the appeal, it must be pursuant to the judicial economy exception to the final judgment rule. Particularly unique circumstances may justify reaching the merits of an interlocutory appeal pursuant to the judicial economy exception to the final judgment rule. *See, e.g., Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶ 23, 956 A.2d 110 (concluding that "the exceedingly long history of this litigation" and the "unusual circumstance" of the case warranted the application of the judicial economy exception to the final judgment rule); *Adoption of Michaela C.*, 2004 ME 153, ¶ 14, 863 A.2d 270 (concluding that the judicial economy exception is appropriate when there were three proceedings pending in separate courts involving the same party and the pendency of the proceedings had created a stalemate); *Williams v. Williams*, 1998 ME 32, ¶ 7, 706 A.2d 1038 (accepting the appeal in the interest of judicial economy when the litigation had been subject to "inordinate delay" and "it [was] possible to finally resolve virtually every issue").

[¶ 23] Although there has been a large number of lawsuits involving Liberty, Bennett, and other related parties, and although an argument could be made that the litigious history of this case and related proceedings warrants application of the judicial economy exception to the final judgment rule to reach the merits of the appeal and move the case toward finality, there is no evidence that accepting this appeal will establish a final or practically

---

4. When a client initiates a legal malpractice claim against his or her attorney, any relevant privileged communication with that attorney is considered waived. *See* M.R. Prof. Conduct 1.6(b)(5); *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989) (stating that the privilege is waived when a party "place[s] information protected by it in issue through some affirmative act for his own benefit") (quotation marks omitted); *see also* Field & Murray, *Maine Evidence* § 502.5 at 220 (6th ed.2007) ("Once [the attorney-client privilege] is waived, it cannot be later revived.").

final disposition of the litigation. Accordingly, we decline to apply the judicial economy exception to the final judgment rule to reach the merits of this appeal.

The entry is:

Appeal dismissed as interlocutory.