MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 84
Docket:       Wal-18-149
Argued:       June 12, 2018
Decided:      July 3, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

SHARON CARRILLO

GORMAN, J.

[¶1]  Sharon Carrillo appeals from an order entered by the trial court (Waldo County, *R. Murray, J.*) denying her motion to disqualify the State's attorneys from further participation in her prosecution for murder, 17-A M.R.S. § 201(1)(B) (2017).  Carrillo contends that the two Assistant Attorneys General representing the State should have been disqualified based on their access to privileged or confidential information obtained by the State's violation of the subpoena process.  We dismiss the appeal as interlocutory.

I.  BACKGROUND

[¶2]  On March 15, 2018, Carrillo was indicted for depraved indifference murder, 17-A M.R.S. § 201(1)(B), in connection with the death of her ten-year-old daughter.  Soon after, the State subpoenaed records relating to

2

Carrillo from Carrillo's former school and former employer in New York. After concluding that the State had obtained the records through a violation of the subpoena process set out in M.R.U. Crim. P. 17A, the court granted Carrillo's request for a protective order and required that all documents produced in response to the subpoenas be surrendered to the court to be placed under seal.

[¶3]  Carrillo also moved to disqualify the State's attorneys from participating further in her prosecution on the ground that the prosecutors committed "serious and ethical violations" in obtaining the subpoenaed information.  After a hearing, by order dated April 12, 2018, the court denied the motion to disqualify, stating that "disqualification . . . is reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other unethical attorney behavior," and that it was not persuaded that the prosecutors' error rose "to that level of behavior which would warrant the rather extraordinary remedy of disqualification." (Quotation marks omitted.)  Carrillo instituted this appeal to challenge the court's denial of her motion to disqualify.

## II. DISCUSSION

[¶4]  We first consider the State's motion to dismiss the appeal as interlocutory.  "It is well settled that appeals, in order to be cognizable, must be

from a final judgment." *State v. Lemay*, 611 A.2d 67, 68 (Me. 1992). There is no dispute that Carrillo's case is far from a final judgment. *See Bond v. Bond*, 2011 ME 105, ¶ 5, 30 A.3d 816 ("A judgment is final only if it disposes of all the pending claims in the action, leaving no questions for the future consideration of the court." (quotation marks omitted)). Carrillo contends, however, that the matter qualifies for immediate review pursuant to the death knell exception to the final judgment rule, which applies "when substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 13, 957 A.2d 56 (quotation marks omitted). It is Carrillo's burden, as the appellant seeking immediate review, to demonstrate that the exception to the final judgment rule applies. *See Sanborn v. Sanborn*, 2005 ME 95, ¶ 6, 877 A.2d 1075.

[¶5] We have categorically held that the *grant* of a motion to disqualify is immediately appealable because "[t]he disqualification of an attorney will involve a disadvantage and expense that cannot be remedied after the conclusion of the case." *Tungate v. MacLean-Stevens Studios, Inc.*, 1997 ME 113, ¶ 5, 695 A.2d 564. "[T]he question of whether a party is entitled to be represented by counsel of the party's choosing must be determined early in the

4

case, or that right is lost." *Irving Oil Ltd. v. ACE INA Ins.*, 2014 ME 62, ¶ 14, 91 A.3d 594.

[¶6]  The *denial* of a motion to disqualify implicates no such concerns, however, *Tungate*, 1997 ME 113, ¶¶ 4-5, 695 A.2d 564, because "if we determine on review following the entry of a final judgment that disqualification is required, then that action can occur prior to a new trial, and both parties would be put in the same position that they would have been in if disqualification occurred following an interlocutory appeal," *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 21, 974 A.2d 918.  We have also warned that "a blanket exception to the final judgment rule allowing the denial of a motion to disqualify to be immediately appealed would allow any appellant to force us to prematurely review issues that would otherwise have to wait for the complete record that accompanies a final judgment." *Id.* ¶ 22.  Such a practice would at once "eviscerate" the final judgment rule, *id.* ¶ 23, and allow motions for disqualification to be "abused for tactical purposes," *Morin v. Me. Educ. Ass'n*, 2010 ME 36, ¶ 8, 993 A.2d 1097.

[¶7]  In *Markheim*, an isolated case involving a civil claim, we considered the merits of a denial of a motion to disqualify in an interlocutory appeal after determining that the death knell exception to the final judgment rule applied.

2008 ME 138, ¶¶ 1, 13, 20-22, 957 A.2d 56.  In that case, the trial court denied a motion to disqualify the attorney for the opposing party in which the moving parties argued that the attorney was "privy to confidential information" when he previously represented them in a "substantially similar" prior litigation.  *Id.* ¶¶ 1, 4, 10, 21.  We agreed to review the appeal on the merits because the moving parties had identified "specific examples" of the confidential information the attorney had from his prior representation that could harm them in the pending matter.  *Id.* ¶¶ 20-21.  Otherwise, we held, "the confidences and privileged information revealed in the course of the proceedings would become part of the record."  *Id.* ¶ 20; *see Butler v. Romanova*, 2008 ME 99, ¶¶ 5-10, 953 A.2d 748 (considering the merits of the court's denial of a motion to disqualify in a divorce matter after concluding, without elaborating, that the moving party otherwise "[stood] to irreparably lose substantial rights").

[¶8]  Even if we were to apply *Markheim*'s analysis to Carrillo's appeal, we would have to conclude that Carrillo has not met her burden of establishing the application of the death knell exception to the final judgment rule.  Unlike the moving party in *Markheim*, 2008 ME 138, ¶ 20, 957 A.2d 56, Carrillo has failed to articulate any irreparable loss of a right that she stands to suffer by allowing these prosecutors to continue to represent the State.  She has argued

that the prosecutors' knowledge of the records "interferes with [her] right to testify at trial" and "taints the process" because, "[i]f she testifies at trial, . . . she will know that these prosecutors have read private and sensitive personal information about her which she thought was confidential and secret." Carrillo has also argued that "[e]ven if the prosecution was prohibited from using the information [obtained from the records] directly, they would be able to push and explore on cross examination – or through their own expert presentation further develop – aspects of different psychological background and cognitive functioning that they have learned about through the acquisition" of the records at issue. Such general assertions, however, do not constitute the specific demonstration of irreparable loss that is required to abandon our otherwise well-settled application of the final judgment rule to denials of motions to disqualify. *See Subilia*, 2009 ME 71, ¶ 21, 974 A.2d 918; *cf. Markheim*, 2008 ME 138, ¶¶ 20-21, 957 A.2d 56. We note also that the trial court has already issued an appropriate protective order and required that all documents produced in response to the subpoenas be placed under seal with the court. Given the circumstances presented by this case, we decline to apply the death knell exception to the final judgment rule, and we therefore dismiss the appeal as interlocutory.

The entry is:

Appeal dismissed.

---

Christopher K. MacLean, Esq. (orally), and Laura P. Shaw, Esq., Camden Law LLP, Camden, for appellant Sharon Carrillo

Janet T. Mills, Attorney General and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Waldo County Unified Criminal Docket docket number CR-2018-146
FOR CLERK REFERENCE ONLY