STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-097 ✓

PAUL KAPOTHANASIS, et. al.

       Plaintiffs

       v.

CHRISTO KAPOTHANASIS

       Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANT'S
MOTION FOR RECONSIDERATION

Before the Court is Defendant Christo Kaptohanasis' Motion for Reconsideration of this Court's order denying Plaintiffs Paul Kapothanasis and Prompto Companies' (collectively "Plaintiffs") Motion to Disqualify. *See Order on Plaintiffs' Motion to Disqualify*, No. CV-21-079, (May 9th, 2022). Despite the Court's ruling being in their favor, the Defendant asks the Court to reconsider its finding that its counsel, Bernstein, Shur, Sawyer and Nelson violated Maine Rule of Professional Conduct ("M.R. Prof. Conduct") 1.9. For the reasons set forth herein, the Motion is DENIED.

## INTRODUCTION

Disqualification of counsel is a sanction intended to punish egregious and severe ethical violations — it is not an automatic occurrence. The Law Court has recognized this, fashioning a

1

REC'D CUMB CLERKS OFC
AUG 1 '22 AM 8:28

two-pronged analytical approach to deciding disqualification motions. *See Morin v. Me. Educ. Ass'n*, 2010 ME 36, ¶ 9, 993 A.2d 1097. When an attorney or their firm has committed an ethical violation, it does not always result in disqualification.

The record in this case evidences the existence of a tumultuous relationship between brothers — and business partners — which was exacerbated by the tragic deaths of three family members who were also shareholders of the Prompto Companies. Since early 2019, when family members Charlie, Effie, and Tasso passed, the already intense conflict between Paul and Christo has become more hostile. This Court hopes, with an arbitration proceeding occurring soon, that this Order provides the parties with a path towards resolution.

In this Order, the Court denies Christo's Motion for Reconsideration, reaffirming the Court's findings that (1) Christo's counsel violated Rule 1.9; and (2) his counsel is not disqualified. As is discussed in greater detail below, the Court also finds that a decision by Bernstein to continue to engage in representation of Christo does not constitute an ongoing ethical violation. Bernstein's Rule 1.9 violation occurred at the time they chose to represent Christo without Paul's consent. The corrective measures instituted by Bernstein since then have avoided their 1.9 violation from causing Paul any actual harm of a continuing nature.

## FACTUAL BACKGROUND

The factual background underlying the instant Motion is more fully set forth in this Court's order dated May 9th, 2022. The brief, relevant facts are as follows:

On May 9th, 2022, this Court issued an order denying the Plaintiffs' Motion for Disqualification of Bernstein, Shur, Sawyer, and Nelson ("Bernstein") as counsel for Defendant Christo Kapothanasis ("Christo"). In their Motion, the Plaintiffs charged Bernstein with violating three Maine Rules of Professional Conduct ("M.R. Prof. Conduct"): 1.7, 1.9 and 3.7.

2

The Court declined to find a violation of Rules 1.7 and 3.7 but did determine that Rule 1.9. had been violated. Relevant to the Rule 1.9 analysis were three prior engagements that Bernstein had with Paul: A 2017 conversation with Bernstein Attorney John Carpenter ("Carpenter"), a 2019 conversation with Bernstein Attorney David Solely, and a 2020 conversation with Bernstein Attorney George Burns. The 2017 conversation with Carpenter bore heaviest on the Court's analysis and was subject to very different recollections by the parties. Attorney Carpenter could not recall any conversation at the meeting concerning Christo while Paul Kapothanasis seemed to remember Christo being the primary topic of discussion.

In deciding the Plaintiffs' Motion, this Court engaged in the two step analysis fashioned by the Law Court for disqualification motions in *Morin*, 2010 ME 36, ¶ 9, 993 A.2d 1097. After a comprehensive and thorough review of the parties' filings, the Court determined that (1) Bernstein violated M.R. Prof. Conduct 1.9, and (2) that continued representation of Christo by Bernstein would cause Paul Kapothanasis no actual prejudice. Because the Court did not find actual prejudice resulting from Bernstein's violation, it denied the motion for disqualification

In essence, the Court's order declining disqualification sought to strike a difficult balance — reaffirming the ethical canons central to the legal profession, while, at the same time, allowing legal representation to proceed where such representation would not be actually prejudicial to the opposing party. Put another way, the Court's order sought to highlight the ethically violative inception of Bernstein's representation while acknowledging that a sanction disqualifying counsel would serve no practical purpose from a deterrent or retributive perspective.

After the order issued, Paul's Counsel, Pierce Atwood ("Pierce") sent a letter to Bernstein which requested, in light of this Court's order, that Bernstein "withdraw from" representation of

3

Christo. (Def. Mot. Recons. Ex. 1.) In support of their request, Pierce asserted that Bernstein's continued representation of Christo is an ethical violation which is "continuing in nature" and that continued representation of Christo would "constitute further violations." (Def. Mot. Recons. Ex. 1.)

Frustrated with Pierce's continued legal offensive, Bernstein filed the instant Motion for Reconsideration on May 27th, 2022. Pierce filed an opposition on June 17th, and Bernstein replied on June 29th. The Motion for Reconsideration, now fully briefed, awaits a decision.

## LEGAL STANDARD

"Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Rule 7(b)(5) is intended to deter disappointed litigants from seeking "to reargue points that were or could have been presented to the court on the underlying motion." *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714. The Rule gives the court "more leeway" when responding to motions that are frequently brought to relitigate fully presented and decided issues. *Ten Voters of City of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196.

## DISCUSSION

Christo's Motion for Reconsideration draws the Court's attention to one section of its May 9th order. Specifically, it requests that the Court reconsider its determination that Bernstein violated M.R. Prof. Conduct Rule 1.9. Christo maintains that the Court committed an error when it determined that there was enough record evidence to support a finding that Bernstein affirmatively violated Rule 1.9. He also contends that the Court's Rule 1.9 finding and its

4

determination that no actual prejudice would result from continued representation, are inconsistent.

Christo's Motion, Paul's opposition, and Christo's reply force this Court to closely examine two components of its disqualification order and consider its implications. Accordingly, the Court first addresses M.R. Prof. Conduct 1.10(a)(2), next it considers Christo's Rule 1.9 arguments, and finally, the Court addresses Paul's assertion that continued representation of Christo by Bernstein constitutes a conflict that is continuing in nature.

## I.    M.R. Prof. Conduct 1.10(a)(2)

The Court initially recognizes that it did indeed make an error when it referenced a potential procedure for curing conflict imputation under Rule 1.10(a)(2). The text of that rule only applies where a violation of Rule 1.9 arises out of a disqualified lawyer's "association with a prior firm." M.R. Prof. Conduct 1.10(a)(2). None of the ethically violative conduct charged here arose out of a Bernstein Attorney's association with a prior law firm. Accordingly, the Court now determines Rule 1.10(a)(2) is inapplicable.[1]

## II.    Rule 1.9

The heart of Christo's reconsideration request lies in this Court's finding that Bernstein affirmatively violated Rule 1.9. Christo claims the Court made an error by determining that the record supported such a finding. Mindful that M.R. Civ. P. 7(b)(5) Motions do not offer litigants an opportunity to reargue issues that have been fully decided, the Court addresses Christo's more specific claims of error — and Paul's opposition to those claims — in turn.

---

[1] Rule 1.10(a)(2) did not affect the Court's disqualification analysis in a substantive manner. Accordingly, this reconsideration does not alter the Court's ultimate conclusions. The Court finds it prudent to correct its error nonetheless.

Christo specifically challenges the Court's finding that Paul's prior engagements with Attorney Carpenter presented a "substantial risk" that "confidential factual information" was obtained in the prior representation which would "materially advance" Christo's position in the current matter. He also alleges that a finding that the two representations are substantially related is inconsistent with the Court's holding that no actual prejudice would result from continued representation.

## A. Record Support for a Finding that Bernstein Violated Rule 1.9

This Court's disqualification order found that Bernstein had violated M.R. Prof. Conduct 1.9 which provides, in pertinent part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives the informed consent, confirmed in writing

> . . .

> (d) matters are substantially related for purposes of this Rule if they involve the same transaction or legal dispute or if there *otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.*

M.R. Prof. Conduct 1.9(a), (d) (emphasis added).

Christo chiefly argues that the Court erred in finding a Rule 1.9 violation because the portions of Paul's second affidavit — which focused, in detail, on his 2017 conversation with Attorney Carpenter — that contained allegations of Christo's workplace misconduct, were not confidential.

In 2020, the Plaintiffs retained Verrill to conduct an independent investigation of "allegations of harassment and creation of a hostile work environment concerning Christo Kapothanasis." (Def.'s Mot. Recons. Ex. 2.) Verrill's report was attached to the Plaintiffs'

6

complaint as Exhibit 6, and fully disclosed to Christo. Thus, Christo contends, none of the information disclosed in the 2017 meeting with Attorney Carpenter, which is also contained in the 2020 Report, is confidential.

To support this assignment of error, the Defendant provides a table comparing the allegations levied in Verrill's report to the recitation of Christo's problematic workplace behavior contained in Paul's second affidavit. Essentially, Christo says that because the content of Paul's conversations with Attorney Carpenter were also captured in Verrill's report — which is no longer confidential pursuant to its attachment as an exhibit to the complaint — Paul's second affidavit cannot support a finding that Bernstein violated Rule 1.9.

In opposition, the Plaintiffs contend that while Paul's affidavit does contain some allegations similar to those in the disclosed Verrill report, it also contains other relevant information that was not addressed during the investigation. Particularly, the Plaintiffs' point to Paul's conversation with Attorney Carpenter about potential strategies for dealing with Christo and his problematic behavior, including (1) removal from Prompto's Board of Directors; and (2) addition of directors to the Board to dilute Christo's voting share. (Pl.'s Resp. Def.'s Mot. Recons. 4-5). They also point to Paul's allegation that he shared extensive information regarding Prompto's corporate structure and operations, as well as a roster of directors and officers for each of the four Prompto companies. (Pl.'s Resp. Def.'s Mot. Recons. 5). Accordingly, the parties fight extensively over whether the information allegedly disclosed to Attorney Carpenter in 2017 by Paul constitutes "confidential factual information."

For matters to be substantially related, M.R. Prof. Conduct 1.9(d) does not require that confidential factual information actually be shared which may be used to advance a client's position. It instead requires there to be a *substantial risk* that such information *as would normally*

7

*have been obtained in [Bernstein's] prior representation* could be used to advance the current client's legal position.

Here, what happened in that 2017 meeting with Attorney Carpenter is not entirely clear. There appears to be three sides to the story of this business-related engagement: Paul Kapothanasis', Bernstein's, and the truth. Paul Kapothanasis appears to remember every detail of his 2017 conversation with Attorney Carpenter, while Carpenter "does not recall" any discussion pertaining to Christo. Whatever that middle ground of truth is, the record evidence before the Court on the Motion for Disqualification and the evidence presented now on reconsideration suggest that, *at the time of Bernstein's decision to take Christo on as a client*, there was a "substantial risk" that "confidential factual information as would normally have been obtained in the prior representation" could be used to "materially advance" Christo's position. M.R. Prof. Conduct 1.9 (emphasis added).

In the normal course of representation, Attorney Carpenter likely would have gained valuable information about Paul's opinions of Christo, Paul's business dealings with him, and the makeup of the Prompto Companies business organization. Christo tries to lessen the significance of what was potentially learned by Attorney Carpenter, by saying that none of these things constitute "factual information." (Def.'s Reply Pl.'s Opp. Mot. Recons. 4.) However, Rule 1.9 does not contemplate such a narrow definition of that term.

Contrary to Christo's assertions, Maine's own rules do not limit the scope of confidential information to specific types of facts. Even knowledge of a former client's unrelated "financial difficulties" or "a client's ability to weather the stress of litigation" can serve as knowledge which may make representation of an individual adverse to a former client inappropriate. *See Adam v. Macdonald Page & Co.*, 644 A.2d 461, 464 (Me. 1994); M.R. Prof. Conduct 1.9

8

reporter's notes. Thus, the standard is low. And, even though Attorney Carpenter cannot recall any conversation with Paul about Christo, the depth of Paul and Attorney Carpenter's 2017 conversation — as suggested by Paul's second affidavit and other record evidence — created a substantial risk that Attorney Carpenter observed and/or perceived information which could be used to advance Christo's position in this current matter. Bernstein cannot eviscerate the existence of this risk by chipping away at Paul's allegations regarding what was discussed.

Any time that any seasoned attorney has a chance, through multiple engagements, to observe, listen, and provide advice to a client, there is a risk presented that they will learn something that will be substantively or strategically advantageous in a later suit involving the subject matter of those prior conversations.

This is especially the case where, as here, the allegations in the Plaintiffs' complaint reference conduct that could have — and likely was — shared during the 2017 meeting. Either specifically, or by reference, all the counts remaining against Christo include factual allegations which predate Bernstein's 2017 engagement with Paul. Thus, at the time Bernstein entered their appearance, there was a substantial risk that multiple types of information obtained by Attorney Carpenter, in the 2017 discussion, could be used to aid Christo's defense.

In 2017, Paul sought legal advice from Bernstein regarding how to deal with Christo's problematic workplace behavior. He spoke with Attorney Carpenter about Christo's issues and discussed various ways in which he could remove him as a director or change the corporate structure to resolve these problems. Nearly four years later, in June of 2021, Bernstein entered their appearance for Christo, the client Bernstein Attorneys had previously advised Paul how to oust or dilute. On this set of facts, it is axiomatic that Bernstein should have either turned Christo

9

away or obtained consent from Paul before entering their appearance. They did neither — violating Rule 1.9.

In their Motion for Reconsideration, Christo also urges the Court to assume an ethical violation instead of making an affirmative finding that one has occurred. By altering its finding in this way, Christo claims his counsel will not need to withdraw.

In support of his request, Christo cites *Doe v. Reg'l School Unit No. 21*, in which the Federal Court for the District of Maine declined to find an affirmative ethical violation where the attorney subject to the disqualification motion had previously spent over 140 billable hours on the same case with the opposing law firm. No. 2:11-cv-25-DBH, 2013 U.S. Dist. LEXIS 16700 (Feb. 7, 2013). The Court finds this case distinguishable for several reasons. Chief among them is that, in *Doe*, the Court's analysis under 1.9 turned on whether an attorney-client relationship existed between the client and the attorney in question. The Court never reached whether the subject matter of the litigation was substantially related and, in fact, suggested that had an attorney-client relationship been clearly established, the existence of an ethical violation was a "close" call. *Id.* at * 34. Moreover, the Court does not see a section of the *Doe* order in which an ethical violation is assumed, instead the *Doe* Court refused to decide the issue. *Id.*

The more analogous — and persuasive — case, as noted in this Court's prior order, is *Poor v. Lindell*, No. BCD-CV-18-27, 2019 Me. Bus. & Consumer LEXIS 40, at ** 20-21 (Dec. 9, 2019). There, the court found a violation of the Rules, but still declined to disqualify the violative firm as counsel. Thus, the Motion to Disqualify was denied and the litigation continued, with the same firm acting as counsel moving forward.

## B. Inconsistency of Substantial Relation and Actual Prejudice Findings

Christo next challenges the Court's Rule 1.9 decision on the premise that a finding that the prior and current representations were "substantially related" is inconsistent with a finding that Bernstein's continued representation would not result in actual prejudice to Paul. The Court sees no inconsistency.

As discussed above, a substantial relation between the prior representation and the current one is defined as one where there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." M.R. Prof. Conduct 1.9(d). The Court determined that Bernstein's prior engagement regarding general business matters, and Christo's potential ouster, met this criterion

The second prong of the disqualification analysis places the burden on the movant to make a showing that continued representation by the attorney who committed an ethical violation results in "actual prejudice." *Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097. That is, the moving party must "point to the specific, identifiable harm she will suffer in the litigation by opposing counsel's continued representation." *Id.*

In this Court's disqualification order, it found that Paul had failed to make such a showing. He did not point to *specific, identifiable*, ways in which Bernstein could use information obtained in its prior conversations with Paul to win their case. He pointed to no smoking gun, no harmful credibility information, and no otherwise relevant and confidential information which Christo's counsel could utilize to defeat Paul. Thus, the court determined that disqualification was not an appropriate sanction.

The amalgamation of this Court's Rule 1.9 and actual prejudice findings is this: There is a substantial relationship between Bernstein's prior engagement with Paul and this current one,

11

created by the risk that confidential information learned by Bernstein previously, would be used to advance Christo's legal position. At the same time, Paul — the disqualification movant — did not make a showing that Bernstein's continued representation of Christo would result in actual prejudice — that is, specific, identifiable, harm.

### III. Bernstein's Continued Representation

In response to the Court's disqualification order, Pierce sent a letter to Bernstein again requesting that Bernstein withdraw from representation. In relevant part, the letter stated:

> Though the Court declined to disqualify Bernstein Shur on a narrow finding that the conflict of interest does not create actual prejudice to Paul K or the Prompto Companies, nothing in the Order removes the firm's obligation to comply with the Rules of Professional Conduct going forward. As I first informed you by letter dated June 17th, 2021, my clients object to Bernstein Shur's representation of Christo in these matters. Those objections remain in effect. Accordingly, Bernstein Shur's conflict of interest is continuing in nature, and ongoing representation of Christo would constitute further violations.

(Pl.'s Mot. Recons. Ex. 1.) The Court takes issue with two specific components of Pierce's interpretation of the disqualification order. First, the finding that Paul failed to show that actual prejudice would result from Bernstein's continued representation of Christo was not "narrow." Instead, the finding makes up one half of the disqualification standard developed in the Law Court's disqualification jurisprudence. For a number of reasons — chiefly policy concerns — disqualification is not an appropriate sanction unless actual prejudice can be shown. The actual prejudice requirement helps prevent frivolous and abusive use of the disqualification motion. *See Morin*, 2010 ME 36, ¶ 10, 993 A.2d 1097 ("Indeed, to allow disqualification with proof of anything less than such actual prejudice would be to invite movants to employ this "obvious vehicle for abuse.")

The Court also disagrees with Paul's characterization of Bernstein's 1.9 violation as one which is "continuing in nature." The ethical violation, imputed firmwide, occurred when

12

Bernstein did not seek Paul's consent prior to engaging in representation of Christo. A violation of a duty to a former client (Rule 1.9) occurs when the attorney enters their appearance. Because of the risk that confidential information will be used by the violating attorney, that attorney may not continue to represent the client. However, in the case of a law firm, the analysis is different. If, after the initial violation of the rule, the firm timely screens all prior involved attorneys out of the case, and institutes corrective action, then the violation may not require a disqualification sanction.

Again, the text of Maine's Model Rules of Professional Conduct refutes Paul's position:

> To disqualify a lawyer based upon a claim of a conflict-of-interest, a court must also decide whether disqualification of a lawyer is a proper sanction to remedy a violation of the Rules of Professional Conduct. Courts must balance the public's interest in the integrity of the judicial process with a client's interest in picking his or her own lawyer.

M. R. Prof. Conduct 1.9 Reporter's notes. A Rule 1.9 violation does not mandate removal of an attorney or a law firm from the operative case. It instead, is but one part of the disqualification analysis.

Bernstein's violation of Rule 1.9 was set in time. When the firm decided to enter their appearance on Christo's behalf on June 18th, 2021, without Paul's consent, they violated their duty to a former client. However, in response to Pierce's first letter requesting withdrawal, and subsequent motion for disqualification, Bernstein took the necessary corrective measures to ensure that its violation of Christo going forward will not prejudice Paul.

Bernstein's 1.9 violation has not offended this Court or its process. While entry into this case without Paul's consent was a misjudgment that offers a tail of caution for Bernstein and other firms going forward, Christo's autonomy in choosing his own counsel carries the day. Bernstein is not disqualified as Christo's counsel, and their continued representation of Christo

13

does not constitute an ongoing violation. That is this Court's interpretation of its own order —
the only one that matters.

## CONCLUSION

This order reaffirms the Court's prior order. Bernstein committed a violation of M.R. Prof. Conduct 1.9 when it chose, without Paul's consent, to enter its appearance for Christo. However, that violation results in no actual prejudice to Paul should Bernstein continue to represent Christo. Accordingly, the Court does not impose disqualification as a sanction, nor does it issue any other discipline for Bernstein's Rule 1.9 violation.

Bernstein can continue representation of Christo without fear of retribution for further violations of Rule 1.9. The Court is satisfied with the screening procedures instituted by Bernstein and believes that Bernstein attorneys Jack Woodcock and Paul McDonald can continue to represent Christo in a manner not prejudicial to Paul.

**Entry is:**

Defendant's Motion for Reconsideration is Denied.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 8/1/22

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 8/3/2022

14