2005 ME 61

**In re Florence M. CYR.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 24, 2005.

Decided: May 23, 2005.

Peter D. Klein, Thomas M. Brown, Eaton Peabody, Bangor, for appellant.

Theodore M. Smith, William J. Smith, Smith Law Office, L.L.C., Van Buren, for appellee.

Christopher M. Leger, Caribou, Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Mary Ruth Nichols appeals from the decision of the Aroostook County Probate Court (*Dunleavy, J.*) appointing Regan Cyr as the guardian and conservator of Florence M. Cyr. Nichols contends that the court erred in revoking the durable power of attorney granted to her by Florence and appointing Regan as guardian and conservator in a temporary order and, then later, in a permanent order. Nichols further contends that the court improperly delayed the hearing on her motion to amend or for relief from the temporary order. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] This case arises out of a dispute among the children of Florence M. Cyr regarding the care of their mother. Florence is ninety-two years old and has been diagnosed with dementia. She has been living in the same home in Van Buren since 1940. Florence has seven children, including son Regan Cyr and daughter Mary Ruth Nichols.

[¶ 3] In 1987, Florence conveyed the Van Buren home to herself and Regan as joint tenants. All of the children except Nichols agree that it is Florence's wish to remain in her home until her death. To that end, Regan, as primary caretaker, has arranged for twenty-four-hour care of Florence by her children as well as visiting nurses since 2002.

[¶ 4] In 1997, Florence executed a durable power of attorney naming Nichols. Nichols took no action on behalf of her mother until January 29, 2004, when, pursuant to the purported authority of her power of attorney, and without notice to Regan or her other siblings, Nichols moved Florence to her home in Fort Fairfield.

[¶ 5] On February 9, 2004, Regan filed a petition for appointment of a guardian and conservator in the Probate Court, seeking

both a temporary and permanent order that he be named as Florence's guardian and conservator. *See* 18–A M.R.S.A. §§ 5–303, 5–310 (1998). Following an ex parte testimonial hearing, the court issued a temporary order appointing Regan as Florence's guardian and conservator, and revoking Nichols's power of attorney. Florence was then returned to her home in Van Buren. Nichols moved to amend or for relief from the temporary order pursuant to M.R. Civ. P. 59(e), 60(b).

[¶ 6] Following a testimonial hearing, by order dated July 13, 2004, the court denied Nichols's motion to amend or for relief from the temporary order and appointed Regan as Florence's permanent guardian and conservator. Nichols appeals.

## II.  DISCUSSION

### A.  Power of Attorney

[¶ 7] Although at the trial court level Nichols argued that the general durable power of attorney she held for the benefit of Florence authorized her to remove Florence from her Van Buren home, the crux of this appeal is her contention that, in the absence of malfeasance by her as the holder of the power of attorney, the power of attorney requires the court to appoint her as Florence's guardian. We are unpersuaded by Florence's contention.

[¶ 8] Title 18–A M.R.S.A. § 5–503 unambiguously provides for the appointment of a guardian or conservator notwithstanding the prior execution of a power of attorney naming someone else:

**§ 5–503.  Relation of attorney-in-fact to court-appointed fiduciary**

(a) If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate or other fiduciary charged with the management of all of the principal's property or all of the principal's property except specified exclusions, the attorney-in-fact is accountable to the fiduciary as well as to the principal. The fiduciary has the same power to revoke or amend the power of attorney that the principal would have had if the principal were not disabled or incapacitated; provided, however, that a durable power of attorney for health care may be revoked or amended only with the prior approval of the court upon petition by any interested person.

(b) A principal may nominate, by a durable power of attorney, the conservator, guardian of the principal's estate or guardian of the principal's person for consideration by the court if protective proceedings for the principal's person or estate are commenced. The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney except for good cause or disqualification.

18–A M.R.S.A. § 5–503 (1998). The language of section 5–503 provides that: (1) it is the court that determines who to appoint as guardian and conservator; (2) the court may appoint as a guardian or conservator a person different from the holder of a power of attorney; (3) the holder of a power of attorney is subject to the direction of the guardian or conservator; (4) the guardian or conservator may revoke the power of attorney, except in the case of a health care power of attorney;[1] and (5) only if the principal nominates a particular guardian or conservator in a power of attorney must the court appoint that nominee, unless the court has good cause to do otherwise, or the nominee is disqualified. 18–A M.R.S.A. § 5–503.

---

1. Nichols does not contend that she holds a     health care power of attorney for Florence.

[¶ 9] In this case, the principal, did *not* nominate Nichols as guardian and conservator. *See* 18–A M.R.S.A. § 5–503(b). Only if Florence *had* nominated Nichols as guardian or conservator would the court be *required* to appoint Nichols as guardian and conservator as a matter of law, absent a showing of good cause to the contrary. Accordingly, the court committed no error in appointing Regan.

[¶ 10] Further, Nichols's power of attorney itself contemplates that the two positions are distinct, and that they might be held by different people. It states: "[The power of attorney] may be accepted and relied upon by anyone to whom it is presented until such person (1) receives written notice of revocation by me *or any conservator of my estate,* or (2) has actual knowledge of my death." (Emphasis added.) Nichols's power of attorney thus explicitly provides for the possibility that a guardian and/or conservator may someday be appointed notwithstanding the existence of the power of attorney, and that such guardian/conservator would have the power to revoke the power of attorney simply by providing notice to Nichols. Contrary to Nichols's contentions, neither the existence of, nor the language in, her power of attorney required that the court appoint Nichols as guardian and conservator.[2]

B. Court's Authority to Revoke a Power of Attorney

[¶ 11] Nichols also contends that the Probate Court is not authorized to revoke a valid general durable power of attorney because no statute specifically confers such authority, and thus that the court's temporary order purporting to do

so was of no effect. The authority of the court is a matter of law that we review de novo. *Cf. Town of Carmel v. McSorley,* 2002 ME 33, ¶ 5, 791 A.2d 102, 105 (holding that the jurisdiction of the court is afforded de novo review).

[¶ 12] We are not persuaded by Nichols's argument. The court's authority in this matter is tied to its jurisdiction. Title 18–A M.R.S.A. § 1–302 sets out the subject matter jurisdiction of the Probate Court:

(a) To the full extent provided in sections 3–105, 5–102, 5–402, 7–201 and 7–204, the court has jurisdiction over all subject matter relating to (1) estates of decedents ...; (2) protection of minors and incapacitated persons; and (3) trusts.

(b) The Court has full power to make orders, judgments and decrees *and take all other action necessary and proper to administer justice in the matters which come before it.*

18–A M.R.S.A. § 1–302 (1998 & Supp. 2004) (emphasis added). Section 5–102 further provides that the Probate Court has "exclusive jurisdiction over guardianship proceedings and has jurisdiction over protective proceedings to the extent provided in section 5–402." 18–A M.R.S.A. § 5–102 (1998). Finally, section 5–402 provides that in matters in which the petitioner seeks appointment of a conservator or other protective order, the Probate Court has:

(1) Exclusive jurisdiction to determine the need for a conservator or other protective order until the proceedings are terminated;

2. Moreover, even if Nichols's contention that she should be appointed as guardian unless found to be guilty of malfeasance is correct, the court found that it was Nichols's own actions of removing Florence from her home that brought about the need for a guardian to be appointed. Thus, there was evidence of malfeasance on Nichols's part.

(2) Exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of this State shall be managed, expended or distributed to or for the use of the protected person or any of his dependents;

(3) Concurrent jurisdiction to determine the validity of claims against the person or estate of the protected person and his title to any property or claim.

18–A M.R.S.A. § 5–402 (1998). Taken together, these provisions, couched in terms of the court's jurisdiction, grant authority to the Probate Court to appoint a guardian and conservator to determine how an incapacitated person's estate is to be managed, and to "take all other action necessary and proper to administer justice in the matters which come before it." 18–A M.R.S.A. § 1–302.

[¶ 13] In this case, the court determined, based on competent evidence in the record, that the need for protection of Florence was brought about by Nichols, the very person who held the power of attorney. Indeed, it was pursuant to that power of attorney that Nichols purported to act in removing Florence from her home. Accordingly, the Probate Court was authorized to revoke Nichols's power of attorney as necessary and proper to the administration of Florence's guardianship proceedings.

C. Hearing on Motion to Amend

■ [¶ 14] Nichols further argues that the court violated the statutory mandate by delaying the hearing on her motion to amend or for relief from the court's temporary order. Nichols contends that in scheduling the full testimonial hearing in the matter for April 16, 2004, more than sixty days after the entry of the temporary order on February 10, 2004, the court violated the forty-day statutory mandate of

18–A M.R.S.A. § 5–310–A(b), which provides, in pertinent part:

If the court has exercised temporary guardianship powers or has issued an ex parte order under subsection (a), and if it comes to the court's attention, through the report of the visitor or guardian ad litem or otherwise, ... that an issue exists with respect to whether the temporary guardianship is in the allegedly incapacitated person's best interest, the court shall hold an expedited hearing *within 40 days* of the entry of the ex parte order under subsection (a).

18–A M.R.S.A. § 5–310–A(b) (1998) (emphasis added).

[¶ 15] Nichols's motion to amend or for relief from judgment did raise the issue of whether Regan's guardianship of Florence was in Florence's best interest. The court was authorized to conduct the hearing when it did, however, because of the exception provided in 18–A M.R.S.A. § 5–408–A(b) (1998), that a continuance may be granted when "the petitioner and the attorney for the protected person, or, if none, the visitor or guardian ad litem, agree to such a continuance." The continuance provision in section 5–408–A(b) may be invoked in the absence of knowledge or consent of interested parties like Nichols. The court's scheduling of the full hearing in this matter was within its discretion and did not violate the statute.

D. Sufficiency of the Evidence

■ [¶ 16] Finally, Nichols challenges the sufficiency of the evidence supporting both the temporary and permanent orders appointing Regan as guardian and conservator. We review the trial court's findings of fact supporting the order for clear error, and the determination of the guardian's powers and duties for an abuse of discretion. *Guardianship of Collier,* 653 A.2d 898, 900 (Me.1995). Our inquiry in a

challenge to the sufficiency of the evidence in a civil matter is whether "by any reasonable view of the evidence, including inferences to be drawn therefrom, taken in the light most favorable to the prevailing party, the [judgment] can be sustained." *Bernier v. Merrill Air Engr's*, 2001 ME 17, ¶ 20, 770 A.2d 97, 104 (citation omitted). The existence of contradictory evidence does not, in itself, require us to conclude that insufficient evidence exists to support the judgment, however, because the fact-finder may believe some, all, or none of a witness's testimony. *State v. Bartlett*, 661 A.2d 1107, 1108 (Me.1995). Rather, unless there is no record evidence to support the appointment of a guardian and conservator, we will uphold the court's decision. *See Westleigh v. Conger*, 2000 ME 134, ¶ 12, 755 A.2d 518, 520.

[¶ 17] A temporary guardian may be appointed by ex parte order "[w]hen a person alleged to be incapacitated has no guardian and an emergency exists and no other person appears to have authority to act in the circumstances, upon appropriate petition . . . ." 18–A M.R.S.A. § 5–310–A(a) (1998). Further, "[a] petition for temporary guardianship must be accompanied by an affidavit that sets forth the factual basis for the emergency and the specific powers requested by the proposed guardian." 18–A M.R.S.A. § 5–310–A(a). Because the testimonial hearing on which the court's temporary order was based was apparently not recorded, there is no transcript available for our review of the findings. Nichols did not submit a statement of the evidence in lieu of a transcript pursuant to M.R.App. P. 5(d). Thus, because Nichols has supplied us with no factual record to review, we must assume that adequate evidence exists to support the court's temporary order. *See Rothstein v. Maloney*, 2002 ME 179, ¶ 11, 816 A.2d 812, 813–14 ("Without a transcript, we must assume

that the record fully supports the findings and discretionary choices [of the court].").

[¶ 18] With regard to the court's permanent order, for the court to appoint Regan as Florence's guardian and conservator, the court was required to, and did, find:

> that the person for whom a guardian is sought is incapacitated, that the appointment is necessary or desirable as a means of providing continuing care and supervision . . . of the incapacitated person and, if the allegedly incapacitated person has not attended the hearing, that an inquiry has been made as to whether that person wished to attend the hearing.

18–A M.R.S.A. § 5–304(b) (Supp. 2004). The record from the hearing on the court's permanent order discloses that sufficient evidence exists to support a finding of each of the necessary elements for issuance of the permanent order naming Regan as Florence's guardian and conservator.

The entry is:

Judgment affirmed.