MAINE SUPREME JUDICIAL COURT                                      Reporter of Decisions
Decision:      2013 ME 82
Docket:        Ken-12-588
Submitted
 On Briefs:    June 26, 2013
Decided:       September 19, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## GUARDIANSHIP OF KENNETH V. LABREE

MEAD, J.

[¶1]   The mother of Kenneth LaBree appeals from a judgment of the Kennebec County Probate Court (*Mitchell, J.*) appointing her and Kenneth's paternal aunt as limited coguardians of Kenneth, subject to the mother's compliance with certain conditions.  The court's order provided that if the mother failed to comply with any of the conditions, the paternal aunt could remove Kenneth from his mother's residence, and the court would then terminate the mother's coguardianship.  The mother appealed, arguing that the conditions interfered with her fundamental liberty interest in parenting Kenneth.  Because we conclude that the Probate Court's order cannot be reconciled with principles established in *Guardianship of Jewel M.* (*Jewel II*), 2010 ME 80, 2 A.3d 301, we vacate the judgment and remand the case for further proceedings.

## I. BACKGROUND

[¶2] Kenneth is fourteen years old. After 2006, when he was removed from his mother's custody as a result of an action initiated by the Department of Health and Human Services due to his mother's substance abuse, prostitution, and inconsistent parenting, he lived with his father.[1] During the years when Kenneth was living with his father, he attended the same school regularly. Around April 2011, Kenneth lived with his mother for a short period of time. He returned to his father's care because his grades were slipping and he was not regularly attending school.

[¶3] In April 2012, Kenneth's father died suddenly, and Kenneth began living with his mother again. Within days, Kenneth's paternal aunt and her son, Kenneth's cousin, filed joined petitions for the appointment of a conservator and guardian. The court appointed a guardian ad litem (GAL) and held a hearing on the joined petitions.

[¶4] At the hearing, the petitioners presented the testimony of the GAL, the cousin, and the cousin's wife. Kenneth's mother presented the testimony of Kenneth. Neither Kenneth's mother nor Kenneth's paternal aunt testified. The

---

[1] The protective custody case was dismissed against the recommendation of the guardian *ad litem* and before a final parental rights and responsibilities order was entered.

court did or could have found the following facts from the evidence admitted at the hearing. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903.

[¶5]  The GAL testified that although the mother reported that she is no longer using substances or engaging in prostitution, the GAL was not satisfied that the mother presented sufficient evidence of substance abuse treatment.  The GAL further reported that the mother was generally difficult to contact regarding the guardianship case.

[¶6]  The mother has an unstable personal life.  Since April 2011, Kenneth and his mother have moved six times.  About a week before the hearing, the mother moved herself and Kenneth to Gardiner where they live with her boyfriend and Kenneth's nineteen-month-old half-sister.  The mother and her boyfriend only recently reconciled.  Kenneth has switched schools with every move and has had chronically poor attendance.  As of the date of the hearing he had not yet been enrolled in school in Gardiner.  Kenneth feels that most of the responsibility regarding his failure to participate in meaningful education falls upon his shoulders.

[¶7]  The guardian testified that Kenneth is "quite a sad young man." Despite several recommendations that Kenneth needs to see a counselor, he has not been in counseling because his mother has not arranged it.  He met with the

4

counselor once during a chance meeting at the school and has not made a follow-up appointment.

[¶8]  According to the GAL, Kenneth expressed a "heartfelt desire" to live with his mother, and is "distraught" at the suggestion of not living with her.  The GAL believes that Kenneth's mother is not an appropriate guardian because she is disorganized, inconsistent, unreliable, and difficult to reach.  The GAL opined that Kenneth's paternal uncle and his wife would be appropriate guardians because they were thoughtful about the implications of taking Kenneth into their home and would support contact with his mother.

[¶9]  Kenneth's cousin and his wife live in Gardiner with their daughter and a son who is about the same age as Kenneth.  Kenneth and his cousin's son have attended school together in the past, but have different friends.  There is conflicting evidence about how familiar Kenneth is with his cousin's family.  There was little testimony about the suitability of Kenneth's paternal aunt as guardian; the only testimony about her came from Kenneth.

[¶10]  Following the hearing, the court found by clear and convincing evidence "that circumstances for Kenn[eth] . . . at his mother's home in her custody are temporarily intolerable."  The court then considered the best interest standard, focusing on (A) the potential harm to Kenneth if he was removed from his mother's custody, and (B) his mother's "three major failings" in parenting

Kenneth: (1) failure to ensure Kenneth's schooling, (2) encouraging him to believe his truancy is solely his fault, and (3) failure to secure counseling for him. The court made no findings regarding the suitability of either of the petitioners as guardians for Kenneth. The court appointed Kenneth's mother and paternal aunt his coguardians, subject to certain conditions: (1) his mother must not relocate outside the school district, (2) Kenneth must improve his attendance at school, and (3) he must attend counseling. In support of its order, the court stated that "depriv[ing] Kenn[eth] of [his mother's] presence, succor, charm, touch and support would either devastate him or be the single most important factor in teaching him to grow up and rely on his inner strengths," and concluded that it was "not ready to impose the tough love solution at this point."

[¶11] In February 2013, while this appeal was pending, supplemental filings in the Probate Court indicated that Kenneth's paternal aunt filed her intention to remove Kenneth from the custody of his mother and petitioned for removal of his mother as coguardian. It is alleged that shortly thereafter, Kenneth ran away; it is unclear from the record where he is currently living. The mother objected to her removal as coguardian and moved to dismiss the petition and for a stay of enforcement of the judgment pending appeal. The Probate Court has scheduled these matters for hearing.

## II. DISCUSSION

[¶12]  The mother contends that the order appointing her as a coguardian is inconsistent with the court's finding of an intolerable living situation, and thus interferes with her constitutional right to care for her child.  The mother has "a fundamental liberty interest in parenting h[er] child absent a showing of unfitness." *See Adoption of Tobias D.*, 2012 ME 45, ¶ 9, 40 A.3d 990 (citing *Jewel II*, 2010 ME 80, ¶ 6, 2 A.3d 301).  Because of that interest, the Probate Court

> may appoint a guardian or coguardians for an unmarried minor if
> . . . .
> (c) . . . [it] finds by clear and convincing evidence that . . . a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

18-A M.R.S. § 5-204(c) (2012).  We have construed the statute to mean that "a guardianship may *only* be ordered" if the court makes two findings:

> (1) the parent is currently unable to meet the child's needs and that inability will have an effect on the child's well-being that may be dramatic, and even traumatic, if the child lives with the parent, and (2) the proposed guardian will provide a living situation that is in the best interest of the child.

*Guardianship of Jewel M.* (*Jewel I*), 2010 ME 17, ¶ 13, 989 A.2d 726 (emphasis added).  "The authority of the court is a matter of law that we review de novo." *In re Cyr*, 2005 ME 61, ¶ 11, 873 A.2d 355.

[¶13] We note at the outset that the Probate Court failed to make the second required finding that the petitioners, as the proposed guardians, will provide a living situation that is in Kenneth's best interest. *See Jewel I*, 2010 ME 17, ¶ 13, 989 A.2d 726. That finding is essential to the court's authority to appoint a guardian. *See id.*

[¶14] We turn now to consider the first required finding. Because parental unfitness is determined by the potential detriment to the child "if the child lives with the parent," there is, as the mother contends, an internal inconsistency in the court's order that cannot be reconciled. *Id.* ¶¶ 12-13 (construing 18-A M.R.S. § 5-204(c)). Here, the order simultaneously finds the mother to be unfit if Kenneth were to continue living with her, while also allowing Kenneth to continue living with her. We previously considered and rejected this disposition in *Jewel II*, 2010 ME 80, ¶ 47, 2 A.3d 301.

[¶15] In *Jewel II*, we reviewed an order of the Probate Court appointing the grandmother and the father coguardians of the minor child and awarding shared primary residence. *Id.* ¶ 33. We held that the Probate Court's appointment of the father as coguardian meant that it "necessarily concluded that the [petitioner] had failed to prove, to the clear and convincing evidence standard, that the [parent]'s living situation was temporarily intolerable." *Id.* ¶ 47. Thus, in this matter, the Probate Court's finding that the mother created an intolerable living situation, and

8

the Probate Court's appointment of her as coguardian and placing Kenneth in her home, are inconsistent and cannot be reconciled with the principles established in *Jewel II*. We acknowledge and commend the Probate Court's efforts to fashion a creative approach to a difficult circumstance, but given the constraints of the requirements of 18-A M.R.S. § 5-204(c), and the lack of findings on the issue of the suitability of the coguardians, we must vacate.

[¶16] Accordingly, we remand the case for further proceedings consistent with this opinion. On remand, the court should consider whether the petitioners have proven, by clear and convincing evidence, that the mother is an unfit parent.[2] *See, e.g., Jewel II*, 2010 ME 80, ¶ 12, 2 A.3d 301.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

**On the briefs:**

Edward R. Hoyt IV, Esq., and Ronald W. Bourget, Esq., Law Offices of Ronald W. Bourget, Augusta, for appellant mother

Tammy Ham-Thompson, Esq., Farris Law, P.A., Gardiner, for appellees paternal aunt and cousin

Kennebec County Probate Court docket number 2012-214
FOR CLERK REFERENCE ONLY

---

[2] The Probate Court's order states that the mother "fail[ed] to produce any evidence to rebut the inference" of her unfitness. The burden of proof is not on the mother, but on the petitioners. *See, e.g., Guardianship of Jewel M.*, 2010 ME 80, ¶ 12, 2 A.3d 301.