MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2015 ME 95
Docket:        Pen-15-39
Submitted
 On Briefs:    July 1, 2015
Decided:       July 28, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

GUARDIANSHIP OF COLLEEN M. McINTOSH

ALEXANDER, J.

[¶1]  Colleen M. McIntosh appeals from a judgment of the Penobscot County Probate Court (*R. Bradford, J.*) making the Department of Health and Human Services her public guardian pursuant to 18-A M.R.S. §§ 5-304, 5-601 (2014).  McIntosh challenges the court's findings, by clear and convincing evidence, that she is incapacitated and that appointment of the Department as public guardian is necessary or desirable as a means of providing for her continuing care and supervision.  Because competent evidence in the record, which was thoroughly developed in the course of this guardianship proceeding, supports the court's findings and conclusions to the requisite standard of proof, we affirm the judgment.

I.  CASE HISTORY

[¶2]  The facts in the Probate Court record may be summarized as follows. In October 2010, the mother of Colleen M. McIntosh filed in the Penobscot County

Probate Court a petition for private guardianship of an incapacitated person. *See* 18-A M.R.S. § 5-303 (2014). At that time, McIntosh had recently been diagnosed with schizophrenia, and concerns had arisen regarding her well-being during her hospitalization for psychiatric treatment. Following a hearing, the court (*A. Woodcock, J.*) appointed McIntosh's mother to be her temporary guardian pursuant to 18-A M.R.S. § 5-310-A(a) (2014). In April 2011, prior to a final hearing, McIntosh's mother withdrew her petition.[1]

[¶3] On July 2, 2014, the Department filed its petition, which is the subject of this appeal, seeking a general public guardianship over McIntosh. *See* 18-A M.R.S. §§ 5-303, 5-601, 5-602 (2014). McIntosh had spent most of the previous five years in various Maine psychiatric hospitals. During her most recent hospitalization, McIntosh frequently asked for or demanded changes to her medications. Specifically, she demanded to stop a medication that her doctors found to be effective and sought to resume a medication that, in the past, had caused her to experience serious side effects. According to her doctors, her mental and functional conditions were deteriorating.

---

[1] The reasons for the withdrawal of this petition are not apparent in the record. The record indicates that McIntosh's mother also filed for and was granted a temporary private guardianship for McIntosh in the Waldo County Probate Court in January 2010. That guardianship was terminated in July 2010 when the Waldo County Probate Court (*Longley, J.*) found that, although McIntosh's condition made an appointment desirable, her mother was "overwhelmed with other responsibilities" and not in a position to provide continuing care and supervision for her daughter through a guardianship established pursuant to 18-A M.R.S. § 5-304 (2014).

[¶4]　In its petition, the Department alleged that McIntosh's diagnosis of chronic paranoid schizophrenia renders her incapacitated as defined by 18-A M.R.S. § 5-101(1) (2014) and that "constant vacillation" in medication, as she requested, could cause serious reactions and compromise the efficacy of her treatment.　The Department further alleged that McIntosh is at risk of health decline as well as financial exploitation if she returns to her mother.　The Department asserted that McIntosh's mother had not provided any funds to McIntosh during her recent hospitalization, despite the mother being the representative payee for McIntosh's Social Security disability payments.　In addition, the Department asserted that McIntosh's mother had attempted to influence McIntosh's treatment with changes that had worsened her condition.

[¶5]　The Department sought full authority to oversee and authorize McIntosh's medical and psychiatric care, financial management, and placement. As part of its guardianship plan, *see id.* § 5-303(a), the Department sought to authorize the least restrictive living situation for McIntosh, such as a group home. After a hearing held on July 3, 2014, the court appointed the Department as temporary guardian pursuant to 18-A M.R.S. § 5-310-A(a).　The court also appointed counsel and a visitor for McIntosh.　*See* 18-A M.R.S. §§ 5-303(b), 5-308 (2014).

4

[¶6]     McIntosh's mother then filed her third petition for private guardianship,[2] seeking a general guardianship that would allow her to coordinate her daughter's needs while McIntosh lived at home with her.  Although McIntosh's mother did file a guardianship plan, *see id.* § 5-303(a), a physician's report, which is required by 18-A M.R.S. § 5-303(b) and (d), was never submitted to accompany her petition.  Following an expedited hearing, with appropriate notice, the court entered an order in September 2014 providing that the Department would remain McIntosh's temporary guardian.  *See id.* § 5-310-A(b), (c).

[¶7]  The court held a contested final hearing on the Department's petition on December 16, 2014.  Prior to the final hearing, the court provided proper notice to all interested persons, including McIntosh's father, who chose not to participate in the guardianship proceedings.  *See* 18-A M.R.S. §§ 1-401, 5-309 (2014); M.R. Prob. P. 4.  At the outset of the proceedings, the court noted that because McIntosh's mother had not filed the requisite physician's report, the court could not hear her petition.[3]

---

[2]   McIntosh's mother's first petition had been filed in Waldo County in January 2010 and terminated by the Waldo County Probate Court in July 2010.  Her second petition had been filed in Penobscot County in October 2010 and withdrawn by her in April 2011.

[3]   The court never formally dismissed McIntosh's mother's petition, indicating only that it could not address her petition because it was incomplete.  The court also indicated that, if the Department did not meet its burden, and the court was also convinced that McIntosh did not need a guardian at this time, McIntosh's mother's petition could be rendered moot.

[¶8]  Proceeding on the Department's petition, the court received testimony from ten witnesses, including: for the Department, two psychiatrists and a social worker from the facility at which McIntosh was hospitalized, McIntosh's appointed visitor, and a Department caseworker; and for McIntosh, her mother, several other family members and friends, and McIntosh herself.  The court also admitted in evidence the physician's report of one of McIntosh's treating psychiatrists and a report submitted by McIntosh's appointed visitor.  The hearing was recorded in a manner that permitted preparation of a transcript of the hearing.

[¶9]  By an order entered on December 30, 2014, the court appointed the Department as general public guardian for McIntosh based on its findings, by clear and convincing evidence,[4] that McIntosh was incapacitated and in need of a full guardianship until her condition becomes adequately controlled, and that there was no suitable private person at the time to fulfill that need.  *See id.* §§ 5-101(1), 5-304(b), 5-602.  In addition to findings on the central issues, the court made several supplementary findings, including that McIntosh has been unable to control her chronic schizophrenia; that she has voluntarily opposed treatment options due to perceived side effects; that she has sought hospital assistance when confronted

---

[4]  In *Guardianship of Chamberlain*, 2015 ME 76, ¶¶ 17-35, --- A.3d ---, an appeal involving a guardianship of a minor, we recognized that the clear and convincing evidence standard of proof is also necessary for all material findings supporting a permanent guardianship involving minors, even in those cases involving a person determined to be a de facto guardian.

6

by events she cannot handle; and that, based on past attempts by her mother and siblings to assist McIntosh, family members were unlikely to be able to provide adequate care for her.

[¶10] McIntosh timely moved for findings of fact and conclusions of law, *see id.* § 5-304(c); M.R. Prob. P. 52; M.R. Civ. P. 52(a), requesting additional findings to provide the basis for the court's conclusion that she meets the statutory definition of an incapacitated person, *see* 18-A M.R.S. § 5-101(1). The court granted her motion and issued additional findings and conclusions, including that (1) the psychiatrists' testimony clearly and convincingly established that McIntosh suffers from schizophrenia; (2) McIntosh failed to willingly take medication prescribed for her; and (3) McIntosh acknowledged that she seeks out publicly available mental health assistance and medication when her mental illness overwhelms her.

[¶11] McIntosh filed this timely appeal pursuant to 18-A M.R.S. § 1-308 (2014) and M.R. App. P. 2. A transcript of the hearing on the Department's petition is part of the record on appeal.[5] *See* M.R. App. P. 5(b)(2).

---

[5] Following issuance of the briefing schedule, we received a hand-written brief from McIntosh's mother as well as a letter from McIntosh. In the interest of allowing all interested parties to be heard, as the trial court did, we have considered both submissions along with the briefs of the parties. *See* 18-A M.R.S. § 5-309(a)(1) (2014) (providing that notice of an adult guardianship proceeding must be given to both the person alleged to be incapacitated and that person's parents).

## II. LEGAL ANALYSIS

[¶12] McIntosh challenges the sufficiency of the findings and the evidence supporting the guardianship judgment—in particular, the required findings that she "is incapacitated and that the appointment is necessary or desirable as a means of providing continuing care and supervision of the incapacitated person." 18-A M.R.S. § 5-304(b). Review of the record demonstrates that there is ample evidence supporting a finding, to the clear and convincing evidence standard, of each of the elements necessary for issuance of an order appointing the Department as McIntosh's public guardian.

### A. Probate Court Procedures and Record

[¶13] The Probate Court ensured that the necessary procedures were followed in the course of this guardianship proceeding: (1) the court appointed counsel for McIntosh, *see id*. § 5-303(b); (2) the court appointed a visitor, who made the requisite investigation, filed a report, and was present and testified at the hearing, *see id*. §§ 5-303(b), (c), 5-308; (3) McIntosh was given an opportunity for an independent evaluation, *see id*. § 5-303(b); (4) all interested persons were provided with notice and an opportunity to be heard, *see id*. §§ 1-401, 5-309; and (5) the hearing on the petition was recorded in a manner that allowed subsequent preparation of a transcript. *See Guardianship of Chamberlain*, 2015 ME 76, ¶ 6 n.2, --- A.3d ---; *Guardianship of Hughes*, 1998 ME 186, ¶¶ 8-15, 715 A.2d 919

(outlining the fundamental liberty interests implicated in adult guardianship proceedings and procedural safeguards in place).

[¶14]  In proceedings in which fundamental liberty interests are implicated, due process requires that there be an adequate record of the trial court decision, including any transcript of the proceedings, to permit fair consideration of the issues on appeal.  *See State v. King*, 2015 ME 41, ¶ 4, 114 A.3d 664; *State v. Milliken*, 2010 ME 1, ¶¶ 12-13, 985 A.2d 1152.  An adequate, retrievable record of a trial court proceeding may also be essential for consideration of issues raised post-judgment or in a subsequent proceeding in the trial court, as can occur in guardianship proceedings.  *Cf. State v. Dickinson*, 662 A.2d 202, 204 (Me. 1995) (vacating sentences and remanding for resentencing when a court reporter lost the notes of the original sentencing hearing and was unable to transcribe the hearing for consideration in a sentence review proceeding).

[¶15]  This requirement applies to guardianship matters because, without an adequate record, including a transcript, the appellate court and the parties to the appeal cannot adequately address the trial court's fact-findings and exercises of its discretion.  *See Guardianship of Chamberlain*, 2015 ME 76, ¶ 6 n.2, --- A.3d --- (noting recording requirement in proceedings for appointment of a guardian for a minor); *Guardianship of Helen F.*, 2013 ME 18, ¶ 7, 60 A.3d 786 (remanding for a new hearing when the trial judge did not recall the contents of an unrecorded

hearing sufficiently to review and approve statements of the record submitted by the parties).

B.    Review of the Guardianship Decision

[¶16] Turning to the merits of McIntosh's challenge, we examine all of the facts and circumstances that were before the trial court, and we review the court's factual findings for clear error. *Guardianship of K-M*, 2005 ME 8, ¶ 38, 866 A.2d 106. In reviewing a sufficiency challenge to facts that must be found by clear and convincing evidence,[6] we examine "whether the trial court could have reasonably been persuaded on the basis of evidence in the record that the required factual findings were highly probable." *In re M.S.*, 2014 ME 54, ¶ 13, 90 A.3d 443; *see also In re Cyr*, 2005 ME 61, ¶ 16, 873 A.2d 355 ("[U]nless there is no record evidence to support the appointment of a guardian and conservator, we will uphold the court's decision.").

[¶17] As defined by statute, a court will find a person to be "incapacitated" if the person is "impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause except minority to the extent that he [or she] lacks sufficient understanding or

---

[6] We note that the Probate Court applied the proper standard of proof by requiring that the Department prove the elements supporting appointment of a public guardian according to the heightened "clear and convincing" standard. The adult guardianship provisions were substantially amended in 2009 to impose this standard. *See* P.L. 2009, ch. 349, § 1 (effective Sept. 12, 2009) (codified at 18-A M.R.S. § 5-304(b)).

capacity to make or communicate responsible decisions concerning his [or her] person." 18-A M.R.S. § 5-101(1). Although spouses, family members, and prior guardians are given priority for guardianship, *see* 18-A M.R.S. § 5-311(b) (2014), the court may also appoint the Department as public guardian for incapacitated persons in need of protective services, *see* 18-A M.R.S. §§ 5-601, 5-606 (2014). A court may not appoint a public guardian, however, if it "determines that a suitable private guardian or conservator is available and willing to assume responsibilities for such service." *Id.* § 5-602.

[¶18]  Here, the court had testimony from medical, psychiatric, and institutional professionals establishing that due to her chronic schizophrenia, McIntosh suffers from depression and delusional fears, among other symptoms, and has been unable to function outside of a hospital environment for over five years. The court also had evidence that, although some of her concerns regarding side effects of medications may have been valid, her inability to commit to a treatment plan and her constant requests for changes were detrimental to the effectiveness of her treatment. Thus, there was competent evidence to support findings, to the clear and convincing standard of proof, that McIntosh is incapacitated and that the appointment is necessary for her continuing care and supervision. *See id.* §§ 5-101(1), 5-304(b); *In re Cyr*, 2005 ME 61, ¶ 16, 873 A.2d 355; *Guardianship of K-M*, 2005 ME 8, ¶¶ 38-40, 866 A.2d 106.

[¶19]   Further, there was ample evidence to support a finding that McIntosh's mother would not be a suitable private guardian.  *See* 18-A M.R.S. § 5-602.   Although McIntosh's mother has expressed interest in supporting McIntosh, the record establishes that she is not capable of responsibly managing her daughter's medical care or providing her with the necessary support for a healthy life outside of the hospital.

[¶20]  To the extent that McIntosh challenges the scope of the guardianship, we review "the determination of the guardian's powers and duties for an abuse of discretion."  *In re Cyr*, 2005 ME 61, ¶ 16, 873 A.2d 355.   Here, the court considered certain potentially less restrictive options, namely the possibilities that McIntosh's mother, other relatives, or community members could care for McIntosh, and it found those options inadequate to meet McIntosh's needs.  *See Guardianship of Collier*, 653 A.2d 898, 902 (Me. 1995) (stating that the appointment of a full guardian "should not be done without careful consideration of the prospective ward's specific needs").  Based on McIntosh's condition and the evidence regarding her own and her family's inability to meet her medical and other needs, the court did not abuse its discretion in appointing the Department as public guardian.

The entry is:

Judgment affirmed.

**On the briefs:**

Wayne Doane, Esq., Exeter, for appellant Colleen M. McIntosh

Jeanne Snodgrass, appellee pro se

Janet T. Mills, Attorney General and Janine A. Raquet, Asst. Atty. Gen., Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Penobscot County Probate Court docket number 2010-687
FOR CLERK REFERENCE ONLY