MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 99
Docket:       Cum-15-484
Submitted
 On Briefs:   May 26, 2016
Decided:      July 7, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, and HUMPHREY, JJ.

## GUARDIANSHIP OF HAROLD SANDERS

HUMPHREY, J.

[¶1]  Harold "Danny" Sanders appeals from a judgment of the Cumberland County Probate Court (*Mazziotti, J.*) appointing the Department of Health and Human Services as his public guardian.  He contends that the Probate Court did not have jurisdiction to appoint a guardian.  Because we conclude that the applicable statute did not vest the Probate Court with jurisdiction to appoint a nontemporary guardian for Sanders, we vacate the judgment.[1]

## I.  BACKGROUND

[¶2]  The following facts were found by the Probate Court and are supported by competent record evidence, *see Kilborn v. Carey*, 2016 ME 78, ¶ 3, --- A.3d ---, or are undisputed.  Sanders, sixty-four at the time of his guardianship hearing, has lived most of his life in California.  In 2012, Sanders suffered a stroke that left him partially paralyzed and confined to a wheelchair.  At some point after the sale of

---

[1]  Because the Probate Court did not have jurisdiction, we do not reach Sanders's arguments concerning due process and sufficiency of the evidence.

his home in California, Sanders left that state and traveled to Albuquerque, New Mexico, where he was referred to state services and placed in a nursing home. After leaving New Mexico, he traveled in the course of ten days, in some order, to Arizona, Washington, Georgia, and, finally, Maine with the goal of entering Canada, where he holds dual citizenship, to seek treatment for his paralysis. After Sanders arrived in Maine on October 15, 2013, he checked into a hotel in the Portland area where he relied on the staff to "assist with his transfer from his wheelchair for toileting and bed." The next day, hotel staff notified the Portland police, who transported Sanders to Maine Medical Center (MMC), where he was admitted to the psychiatric unit.

[¶3] MMC initiated civil commitment proceedings that resulted in Sanders being involuntarily committed on October 30, 2013, for a maximum period of fifty days. On November 6, 2013, the Department filed a petition for appointment of a guardian of an incapacitated person for Sanders in the Cumberland County Probate Court, pursuant to 18-A M.R.S. § 5-303(a) (2015).[2] On November 22, 2013, the Department petitioned for a temporary guardianship, and the court granted the petition the same day. Counsel was appointed for Sanders on December 5, 2013.

---

2 The court appointed a visitor, *see* 18-A M.R.S. § 5-303(b) (2015), who submitted a report to the court on December 2, 2013.

In January 2014, Sanders was discharged from MMC and transferred to the geropsychiatric unit at an assisted living facility in Freeport.[3]

[¶4]  The hearing on the Department's petition for guardianship was continued, and the temporary guardianship was extended by agreement on April 2, 2014.  The Probate Court held a hearing on the Department's petition for appointment of a guardian on July 17, 2014.  Two Department caseworkers, a social worker at the assisted living facility, and Sanders testified, and the court admitted multiple medical evaluations that Sanders had undergone since his admission to MMC.

[¶5]  On September 23, 2014, the court issued an adjudication of incapacity and appointed the Department as Sanders's guardian.  The court found, pursuant to 18-A M.R.S. §§ 5-304(b) and 5-602 (2015), that Sanders is incapacitated, that no suitable private guardian is available, and that the appointment of a public guardian is necessary or desirable as a means of providing continuing care and supervision for him.  The court ordered conditions on the guardianship allowing Sanders some freedom to make personal decisions and to have accompanied daylight outings from whatever facility he resides in.  The court also ordered the Department to (1) review his case within six months of the order, and annually thereafter;

---

[3]  Sanders is housed in a locked unit but can go off-unit twice a day for scheduled activities because he is not considered a danger to himself or others.  All geropsychiatric facilities in the state are locked units. Facility staff reviews Sanders's placement in the unit at least every three months.

(2) contact Sanders's children in California on a yearly basis to inquire whether they or other adults known to Sanders would agree to serve as his guardian because "Sanders has no family or friends in Maine and he wishes to return to California"; and (3) "check, on an annual basis, as to whether the State of California wishes to serve as the Public Guardian of Harold Sanders so that he can return to the state as he wishes to do." Finally, the court revoked a durable power of attorney and a California advance health care directive, both executed by Sanders in 2012.

[¶6] On September 30, 2014, Sanders moved for findings of fact and conclusions of law. In November 2014, an annual guardianship plan review was submitted to the court. After an unexplained delay of almost a year, the court issued its findings of fact and conclusions of law in an order dated August 21, 2015. The court restated its findings, by clear and convincing evidence, that Sanders is an "incapacitated person" within the meaning of the adult guardianship statute because "he is impaired by reason of mental illness, and physical illness to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person" and that "[t]here is no suitable private guardian available and willing to assume responsibilities for the protective services" Sanders requires. *See* 18-A M.R.S. §§ 5-304(b), 5-602. The court specifically found, inter alia, that (1) Sanders has been diagnosed with multiple physical and mental conditions, including paranoid

schizophrenia, dementia, hypothyroidism, congestive heart failure, atrial fibrillation, seizure disorder, chronic obstructive pulmonary disease, partial incontinence, left-side paralysis, and insomnia; (2) he is unable to independently perform activities of daily living, including grooming, bathing, toileting, and meal preparation, and generally lacks the ability to care for himself and make responsible decisions; (3) he has been periodically noncompliant with taking his medications; and (4) if released, Sanders does not have a credible plan for his own care: he would return to California and rely on friends to provide his care. The court also found that Sanders is divorced and that neither of his two adult children expressed an interest in serving as his guardian. Following the court's issuance of its findings and conclusions, Sanders timely appealed to us.

## II. DISCUSSION

[¶7] Sanders contends that the Probate Court did not have jurisdiction to appoint a guardian because his situation does not comport with any basis for jurisdiction in the adult guardianship statute. *See* 18-A M.R.S. §§ 5-511 to 5-554 (2015). Although he did not raise this issue before the Probate Court, jurisdiction can be raised at any time, and we review a jurisdictional question de novo. *See In re Cyr*, 2005 ME 61, ¶ 11, 873 A.2d 355.

[¶8] The Maine Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act provides,

A court of this State has jurisdiction to appoint a guardian or issue a protective order for a respondent if:

**(a).** This State is the respondent's home state;

**(b).** On the date the petition is filed, this State is a significant-connection state and:

> **(1).** The respondent does not have a home state or a court of the respondent's home state has declined to exercise jurisdiction because this State is a more appropriate forum;

> **(2).** The respondent has a home state, a petition for an appointment or order is not pending in a court of that state or another significant-connection state and, before the court makes the appointment or issues the order:

>> **(i)** A petition for an appointment or order is not filed in the respondent's home state;

>> **(ii)** An objection to the court's jurisdiction is not filed by a person required to be notified of the proceeding; and

>> **(iii)** The court in this State concludes that it is an appropriate forum under the factors set forth in section 5-526;

> **(3).** This State does not have jurisdiction under either paragraph (1) or (2), the respondent's home state and all significant-connection states have declined to exercise jurisdiction because this State is the more appropriate forum and jurisdiction in this State is consistent with the constitutions of this State and the United States; or

> **(4).** The requirements for special jurisdiction under section 5-524 are met.

18-A M.R.S. § 5-523.[4] The Department concedes that Maine is not Sanders's home state.[5] The Department also concedes that Maine is not a "significant-connection state" because "[t]here is little evidence in the record suggesting that Mr. Sanders had a 'significant connection' to Maine upon his arrival 'other than mere physical presence.'"[6] It is uncontested that Sanders has no family, friends, or property in Maine and has no connection to the state other than his presence in the state *for a single day* before he was admitted to the psychiatric unit at MMC. However, the Department contends that the Probate Court had jurisdiction to appoint a guardian pursuant to subsection 5-523(b)(3).

[¶9] We conclude that the Probate Court did not have jurisdiction pursuant to subsection 5-523(b)(3). If a statute's "language is plain, we must interpret the

---

[4] The statute "provides the exclusive jurisdictional basis for a court of this State to appoint a guardian or issue a protective order for an adult." 18-A M.R.S. § 5-522 (2015).

[5] "Home state" is defined as "the state in which the respondent was physically present, including any period of temporary absence, for at least 6 consecutive months immediately before the filing of a petition for a protective order or the appointment of a guardian or, if none, the state in which the respondent was physically present, including any period of temporary absence, for at least 6 consecutive months ending within the 6 months prior to the filing of the petition." 18-A M.R.S. § 5-521(a)(2) (2015). The Department concedes that "the evidence would support a finding that California qualifies as [Sanders's] 'home state' under this definition."

[6] A "significant-connection state" is "a state, other than the home state, with which a respondent has a significant connection other than mere physical presence and in which substantial evidence concerning the respondent is available." 18-A M.R.S. § 5-521(a)(3) (2015). In determining whether a state is a significant-connection state, a "court shall consider: **(1).** The location of the respondent's family and other persons required to be notified of the guardianship or protective proceeding; **(2).** The length of time the respondent at any time was physically present in the state and the duration of any absence; **(3).** The location of the respondent's property; and **(4).** The extent to which the respondent has ties to the state such as voting registration, state or local tax return filing, vehicle registration, driver's license, social relationship and receipt of services." 18-A M.R.S. § 5-521(b) (2015).

8

statute to mean exactly what it says." *Concord Gen. Mut. Ins. Co. v. Patrons-Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me. 1980). "Stated succinctly, when the language chosen by the Legislature is clear and without ambiguity, it is not the role of the court to look behind those clear words in order to ascertain what the court may conclude was the Legislature's intent." *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 18, 745 A.2d 387. The plain language of subsection (b)(3) provides that Maine must be a "significant-connection state" in order to have jurisdiction pursuant to that subsection. *See* 18-A M.R.S. § 5-523 and subsection (b)(3) ("A court of this State has jurisdiction to appoint a guardian . . . if . . . this State is a significant-connection state *and* . . . [t]his State does not have jurisdiction under either paragraph (1) or (2) . . . ." (emphasis added)). Given this plain language, we will not look beyond the words of the statute to ascertain some possibly different legislative intent.[7] Although the Probate Court has jurisdiction to appoint a

---

[7] The legislative history suggests that the Legislature attempted to adopt section 5-523 wholesale from the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act. *See* 18-A M.R.S.A. § 5-523 cmt. (2011). The text of the Uniform Act's jurisdiction provision is identical to that adopted by Maine *except that the sections are organized differently*, as follows:

A court of this state has jurisdiction to appoint a guardian . . . if:

(1) this state is the respondent's home state;

(2) on the date the petition is filed, this state is a significant-connection state and
. . .

guardian "in an emergency for a term not exceeding 6 months for a respondent who is physically present in this State," 18-A M.R.S. § 5-524(a)(1), even when Maine is neither the home state nor a significant-connection state, the Probate Court did not appoint the Department as Sanders's guardian pursuant to this provision, and Sanders has already been held for much longer than six months.

[¶10]   For these reasons, we must vacate the judgment.   However, we enlarge the time for the issuance of the mandate.   The Clerk of the Law Court is directed to issue the mandate forty-five days after the date of this decision.[8] During the time before the mandate issues, the Department may consider seeking a temporary guardianship pursuant to 18-A M.R.S. § 5-310-A (2015) or 18-A M.R.S. § 5-524, or ask a court to determine whether Sanders's circumstances warrant any other form of State involvement in his care.   Whatever path it chooses, the Department should also consider engaging with California, Sanders's home state, in determining the best option for his safety and well-being.

---

> (3) this state does not have jurisdiction under either paragraph (1) or (2), the respondent's home state and all significant-connection states have declined to exercise jurisdiction because this state is the more appropriate forum, and jurisdiction in this state is consistent with the constitutions of this state and the United States . . . .

Unif. Adult Guardianship & Protective Proc. Juris. Act § 203 (West 2016).  If the Legislature intended for the Maine statute to track exactly with the uniform version, it can amend the statute accordingly.

[8]  Maine Rule of Appellate Procedure 14(a)(2) provides, "The mandate of the Law Court in a civil case shall issue 14 days after the date of decision of the Law Court *unless the time is shortened or enlarged by order of the Law Court.*"  (Emphasis added).

The entry is:

> Judgment vacated. Mandate to issue 45 days after the date of this decision.

**On the briefs:**

Jeremy Pratt, Esq., and Ellen Simmons, Esq., Camden, for appellant Harold Sanders

Janet T. Mills, Attorney General, and Christopher C. Leighton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Cumberland County Probate Court docket number 2013-1425
For Clerk Reference Only