STATE OF MAINE
Cumberland, SS

BUSINESS AND CONSUMER DOCKET
LOCATION: Portland
DOCKET NO. BCD-CV-17-37 ✓

BRIAN J. FOURNIER,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        **ORDER PARTIALLY GRANTING**
                                      )        **PLAINTIFF'S MOTION FOR**
FLATS INDUSTRIAL, INC. f/k/a          )        **SUMMARY JUDGMENT**
FLATS INDUSTRIAL RAILROAD             )
CORPORATION,                          )
                                      )
        Defendant.                    )

Based on a one count Complaint filed in May 2017, this matter came before the Court approximately eighteen months later upon the Motion for Summary Judgment filed by Plaintiff Brian Fournier ("Fournier"). In its Memorandum of Law in Opposition, Defendant Flats Industrial Railroad Corporation ("Flats") does not contest Fournier's right under 8 Del. C. § 220 to inspect information and documents responsive to 40 out of 47 specific requests. At oral argument on October 11, 2018, the Court confirmed that despite resisting Fournier's inspection efforts for approximately a year and half, Flats was not contesting 40 out of 47 requests for inspection. Accordingly, the Court ruled from the Bench on the uncontested portion of Fournier's Motion, and issues this Order to memorialize the Court's ruling from the Bench.

As to the uncontested requests for inspection, the Court finds that the undisputed material facts establish as a matter of law that Fournier is a stockholder of Flats, that Fournier complied with all requirements of 8 Del. C. § 220 in making demand to inspect corporate documents, and

that Mr. Fournier made the demand for a proper purpose, specifically to value his ownership interest in Flats.[1]

The Court further finds that undisputed material facts establish as a matter of law that the records identified in the affidavit of Fournier's valuation expert, Vanessa Claiborne, as Request Nos. 1-6, 8-26, 28, 30-35, 37-38, and 42-47 (the uncontested 40 requests) are essential and sufficient to valuing Fournier's interest in Flats. The Court, however, takes under further advisement the question whether the records identified in Ms. Claiborne's affidavit as Request Nos. 7, 27, 29, 36, 39, 40 and 41 (the contested 7 requests) are likewise essential and sufficient to valuing Mr. Fournier's interest in Flats.

Accordingly, the Court grants Fournier's motion for summary judgment, in part, and, in part, reserves ruling on that motion. In addition, the Court reserves ruling on Fournier's request for attorney fees and costs. The Court will issue an order addressing the issues on which it has reserved ruling at a later date.

Section 220 provides that the Court in its discretion can prescribe conditions with reference to inspection. 8 Del. C. § 220(c). Having found that Fournier is legally entitled to the documents responsive to Request Nos. 1-6, 8-26, 28, 30-35, 37-38, and 42-47 in Ms. Claiborne's affidavit, and given the unreasonable length of time it has taken Flats to announce it does not contest 40 out of 47 inspection requests, the Court in its discretion further orders as follows:

---

[1] At oral argument, although not contesting inspection of the 40 requests, Flats' counsel hedged somewhat with regard to proper purpose, saying that Flats had "qualified" the Statement of Material Facts with regard to proper purpose. Defendant's Memorandum of Law in Opposition, however, does not challenge Fournier's proper purpose, and limits its attack to the permissible scope of inspection. Moreover, Flats' attempted "qualification" by questioning whether Fournier's desire to value his shares is bona fide, neither qualifies nor controverts Fournier's proper purpose. It is well established that a stockholder's desire to value his or her shares in a corporation is a proper purpose, regardless of the reasons. *Macklowe v. Planet Hollywood*, 1994 Del. Ch. LEXIS 182, *12-14; *CM & M Group*, 453 A.2d 788, 792-793.

1. Flats shall prepare, ready, assemble, and make available for inspection by Fournier and/or his counsel all records responsive to Request Nos. 1-6, 8-26, 28, 30-35, 37-38, and 42-47 by the close of business on November 1, 2018.

2. The records produced shall be organized in a readily accessible fashion – in particular, the records shall be tabbed to respond to each individual request as numbered in Ms. Claiborne's affidavit. For example, all records responsive to Request No. 1 shall be organized and tabbed as responsive to Request No. 1.

3. Flats shall take all measures to ensure that it meets the Court's deadline including retaining additional staff if necessary. No extension of the Court's deadline shall be permitted except under extraordinary circumstances.

4. After reviewing the records produced by Flats, Fournier, through his counsel or other designated representative, shall inform Flat's counsel which record he wishes to have copied, including that he wishes all records to be copied. Flats is to make such copies without any further request or delay.

5. Flats shall bear all costs of complying with this Order and shall not pass any costs, including, but not limited to, any copying costs, along to Fournier.

6. The Court will not entertain any further objection from Flats to producing the records responsive to Request Nos. 1-6, 8-26, 28, 30-35, 37-38, and 42-47.

7. Flats may not designate any of the records produced as confidential without Fournier's consent.

8. Failure to strictly comply with this Order will expose Flats and its officers, managers, and directors personally to being held in contempt by this Court and to the full exercise of this Court's contempt powers.

3

Should Flats fail to comply with this Order in any respect, Fournier is directed to notify the Court of that fact promptly, in response to which the Court will promptly schedule a show cause hearing.

The Clerk shall incorporate this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.

Date: Oct. 12, 2018.

_____
Hon. Michael A. Duddy

4

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER DOCKET
LOCATION:  PORTLAND
DOCKET NO. BCD-CV-17-37

BRIAN J. FOURNIER,               )
                                 )
            Plaintiff,           )
                                 )
v.                               )        ORDER GRANTING MOTION FOR
                                 )        SUMMARY JUDGMENT
FLATS INDUSTRIAL, INC.,          )
f/k/a FLATS INDUSTRIAL           )
RAILROAD CORPORATION,            )
                                 )
            Defendant.           )

This matter involves a single count for inspection of documents under Delaware corporation law, 8 *Del. C.* § 220.  Plaintiff Brian J. Fournier ("Fournier") is a shareholder in Defendant Flats Industrial Railroad Corporation ("Flats"). Flats is a Delaware corporation.  In order to value his shares in Flats, Fournier seeks inspection of information and documents described in forty-seven separately enumerated requests. In response to Fournier's Motion for Summary Judgment, Flats indicated it does not object to providing inspection in response to forty of the forty-seven requests.  Accordingly, on October 12, 2018, the Court issued a prior order governing disclosure of information and documents responsive to the uncontested forty requests.  Flats does object to providing disclosures in response to seven of the forty-seven requests, on the grounds that information and documents responsive to those seven requests are not essential to valuing Fournier' shares.

1

Oral argument on Fournier's Motion for Summary Judgment was held on October 11, 2018. Fournier was represented by Brendan Rielly, Esq. Flats was represented by Brett Leland, Esq. For the reasons set forth below, the Court finds there is no genuine issue of material fact, and concludes that Fournier is entitled as a matter of law to disclosure of information and documents responsive to the remaining seven requests.

FACTS

Apart from what it maintains is a factual dispute between the parties' experts regarding the necessary scope of disclosure for the purpose of valuing shares, Flats does not contest the material facts. Although there is no dispute about these facts, the Court recites them briefly for the purpose of establishing the background against which the scope-of-disclosure issue is decided.

Flats is a closely held a Delaware corporation that owns railroad track in Cleveland, Ohio and provides commercial and industrial switching service primarily for the Norfolk Southern Railway. On or about March 23, 2016, Flats' stock was conveyed out of the Estate of Arthur J. Fournier in the following manner: (a) 50% to Arthur's widow Beth Fournier; (b) 12.5% each to Arthur's four children: Brian Fournier, Douglas Fournier, Patrick Fournier, and Catherine McClarity. Thus, Fournier is a stockholder of Flats.

On December 8, 2016, acting through his attorney, Fournier sent a written demand under oath to Flats' representative demanding to "inspect copies of the Corporation's stock ledger reflecting the shareholders of the Corporation, including the number of shares owned by each shareholder, and the Corporation's books and

2

records." Fournier seeks the information in order to determine the status and financial health of Flats, and the value of the shares he owns. Fournier's reasons for valuing his shares include possibly selling them and extricating himself from further relationships with his family members who own the remaining shares.

Since December 2016, Fournier has on more than one occasion reiterated his demand for disclosure. Flats has provided some minimal information in response to Fournier's demand, but has by-and-large failed to provide the information and documents Fournier seeks.

Fournier retained Vanessa Brown Claiborne ("Claiborne") to provide an expert opinion of the value of Flats (and thus the value of Fournier's shares in Flats). Flats does not dispute Claiborne is a qualified expert in business evaluation. In her affidavit, Claiborne enumerated forty-seven requests for information and documents that are typical and essential to valuing a business. In addition to reviewing documents, Claiborne typically requests a site visit, during which she interviews the management, directors, and officers of the company for information relating to operations and finances. In this case, Claiborne has not had the opportunity to interview the management, directors, and officers of Flats for information relating to the operations and finances of the company.[1]

---

[1] Claiborne says she did not ask to interview the management, directors and officers of Flats, because based on the same individuals' refusal to meet with her in the litigation concerning Penobscot Bay Tractor Tug Co., Inc. ("Pen Bay"), such a request would have been futile. Defendant argues that Pen Bay is a separate matter, and whatever occurred in Pen Bay cannot be used in the present case. Defendant is incorrect. By Court order dated October 25, 2017, the Pen Bay case (BCD-CV-17-38) was consolidated with this case (BCD-CV-17-37). The original two cases are thus one case, and Plaintiff and Claiborne can properly seek to draw on events from the Pen Bay side of this litigation to support its Motion for Summary Judgment on the Flats side of this litigation. The Court is nevertheless mindful that the pertinent issues relating to Pen Bay primarily involved discovery disputes, and the issues relating to Flats solely relate to inspection under 8 *Del. C.* § 220. Defendant is correct that discovery

3

Flats retained Seth Webster ("Webster"), not to value Flats, but rather to review the forty-seven requests for information and documents Claiborne asserts are essential to value Fournier's shares in Flats. In his opposition affidavit, Webster agrees (by his silence) that forty of the forty-seven requests enumerated by Claiborne are essential to value Fournier's shares in flats.[2] However, Webster asserts seven of the forty-seven requests are not essential to value Fournier's shares in Flats. Following Claiborne's numbering, the seven categories are as follows:

Request No. 7: Detailed general ledgers, all account statements and credit card statements for the past four fiscal years and 2018 YTD.

Request No. 27: Any documents reflecting how services are priced.

Request No. 29: Any documents reflecting Flats' safety program and the recent experience/workers' compensation modifier.

Request No. 36: A list of each customer 2014 to present, with a description of the services provided, where the services were provided, and the revenue received by Flats from each customer.

Request No. 39: All customer contracts 2014 to present.

---

and Section 220 inspection are not coterminous. *See Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 165 (Del. Ch. 2006) (Section 220 and discovery are entirely different procedures). However, when Claiborne's inability to interview management on the Pen Bay side of the litigation is coupled with (1) Flats emphasis in this case, *see infra*, that Section 220 does not allow for an interview of management, and (2) Flats' counsel's inability at oral argument to confirm Flats would agree to such an interview, it is fair to state as a matter of undisputed fact that it would have been futile for Claiborne to ask to interview the management of Flats. But the Court's Summary Judgment ruling does not turn on the futility of such a request, and the outcome is the same even if there is a genuine dispute of fact regarding futility. Limiting the Court's field of vision to only the Flats side of this litigation, Fournier has established without dispute that Claiborne did not have an opportunity to interview the management, directors, and officers of Flats.

[2] As discussed earlier, the Court has issued a separate Order governing disclosure of information and documents responsive to the forty undisputed requests.

4

Request No. 40: All documents reflecting revenue from customers 2014 to present.

Request No. 41: Flats' operating metrics (number of cars moved, fee/car) in each of the last four years and interim periods.

According to Webster, it is not the role of business evaluators to verify or audit financial statements or other financial documents; business valuators rely on aggregated financial information, and the granular financial information requested by Claiborne in these seven requests is unnecessary for a reliable business valuation. Webster does not dispute that it is appropriate for a business evaluator such as Claiborne to conduct a site visit to interview management for information relating to the operation and finances of the company.

In her supplemental reply affidavit, Claiborne explained that the seven requests for information are necessary because she has not had an opportunity to interview the management, directors, and officers of Flats. Claiborne reiterated that such interviews are an essential part of valuing the company. Without the opportunity to interview management, directors, and officers, Claiborne has no other option to gather the necessary information than through the seven inspection requests.[3]

Accordingly, the Court concludes there is no genuine dispute between the affidavits of Claiborne and Webster; the affidavits speak to two different situations.

---

[3] At oral argument, Defendant's counsel argued that M.R. Civ. P. 56 prevented him from supplying the Court with a supplemental sur-reply affidavit of Webster, which purportedly would dispute Claiborne's reply affidavit. But that is not what Rule 56 provides. According to Rule 56, "[t]he court may permit affidavits to be supplemented or opposed by . . . further affidavits." M.R. Civ. P. 56(e). Defendant neither provided, nor asked to provide, a sur-reply affidavit of Webster, and so the Court decides this matter based on the affidavits that were provided.

Where a business evaluator has the opportunity to interview management, directors, and officers, a somewhat more modest inspection request is sufficient to provide the information necessary to reliably value a company. However, where a business evaluator does not have the opportunity to interview management, directors, and officers, an inspection request including the seven challenged categories is necessary to provide the information necessary to reliably value a company.

The Court thus finds the following undisputed facts have been established. Claiborne is a qualified expert in the field of business evaluation. Interviewing management, directors, and officers of a company is a typical and essential part of valuing a company. If interviewing management, directors, and officers of a company is not an option, then a business evaluator must have the kinds of information and documents responsive to the seven requests described above. In this case, Claiborne has not had the opportunity to interview the management, directors, and officers of Flats.

Hence, information and documents responsive to Request No. 7 (detailed ledgers and statements) are necessary for a business evaluator to understand why expenses were higher or lower in a particular year and to see trends in operating expenses. Information and documents responsive to Request No. 27 (how services are priced) are necessary for a business evaluator to understand the security of the revenue stream and the resulting nature of the risk for the company. Information and documents responsive to Request No. 29 (safety program information) are necessary because they show the operating risk inherent in the company. The safety record of a company like Flats is important because safety problems may affect the company's

6

bottom line. Information and documents responsive to Request Nos. 36, 39, and 40 (customer information) are necessary because customer contracts and revenue are crucial to predicting revenue stream and risk. This information would ordinarily be the primary focus of a management interview, and without the opportunity for an interview, the information is essential. Finally, information and documents responsive to Request No. 41 (operating metrics) are necessary for a business evaluator to understand risk and future revenue by reflecting the volume of business and fees charged.

ANALYSIS

Section 220 of the Delaware corporations code empowers the Court to "summarily order" a corporation to permit a stockholder to inspect the corporation's books and records when certain conditions have been satisfied. 8 *Del. C.* § 220(c). Pursuant to this language, "[s]ummary judgment is an appropriate way to proceed . . . ." *Loew's Theatres, Inc. v. Commercial Credit Co.,* 243 A.2d 78, 81 (Del. Ch. 1968). Granting summary judgment is appropriate when there is no genuine issue as to any material fact, and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). As the moving party in this case, Fournier has the burden to prove the summary judgment record establishes each element of his claim without dispute as to material fact. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015. Fournier has met his burden.

In this case, Flats does not dispute that Fournier has satisfied the three statutory prerequisites for inspection under Section 220: Fournier is a shareholder, he submitted the required shareholder demand for inspection, and he has a proper

purpose for inspecting Flats' books and records.[4] The Court also finds that the three statutory prerequisites have been established. The only dispute in this case involves the scope of the required inspection under Section 220. And even with regard to scope, Flats agrees that Fournier is entitled to inspection of the information and documents responsive to the uncontested forty requests. This case all comes down to whether Fournier is entitled to inspect information and documents responsive to the seven contested requests. The question of whether documents are essential for a stockholder to value his or her shares is "fact specific," *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 788 (Del. Ch. 2018), and the trial court's determination will be overturned only if "clearly wrong." *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 793 (Del. 1982).

In determining the scope of inspection relief under Section 220, "the overriding principle is that only those records that are 'essential and sufficient' to the shareholder's purpose will be included in the court-ordered inspection." *Helmsman Management Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 167 (Del. Ch. 1987) (citation omitted). Flats argues there is a factual dispute about whether the information and documents sought by the seven requests is essential to value Fournier's shares in Flats, and thus summary judgment cannot be granted. Flats

---

[4] At oral argument, Flats' counsel hedged somewhat with regard to proper purpose, saying that Flats had "qualified" the Statement of Material Facts with regard to proper purpose. Defendant's Memorandum of Law in Opposition, however, does not challenge Fournier's proper purpose, and limits its attack to the permissible scope of inspection. Moreover, Flats' attempted "qualification" by questioning whether Fournier's desire to value his shares is bona fide, neither qualifies nor controverts Fournier's proper purpose. It is well established that a stockholder's desire to value his or her shares in a corporation is a proper purpose, regardless of the reasons. *CM & M Group, Inc. v. Carroll*, 453 A.2d 788, 792-793 (Del. 1982); *Macklowe v. Planet Hollywood*, 1994 Del. Ch. LEXIS 182, *12-14 (Sep. 29, 1994).

8

predicates its claim of a factual dispute on what it characterizes as the competing affidavits of Claiborne and Webster. However, as explained above, the Court finds there is no conflict between the affidavits. It is an undisputed fact that interviewing management, directors, and officers about a company's finances and operations is important to a business evaluation, and without the opportunity to interview management, directors, and officers, a business evaluator needs the information responsive to the seven requests in order to prepare an opinion of the company's value.

At oral argument, Defendant's counsel emphasized that Section 220 does not provide for an interview of management. The Court agrees, but that reality only underscores the need for Fournier's business evaluator to have the information and documents she seeks in response to the seven requests. Claiborne has not had an opportunity to interview the management, directors, and officers of Flats; Section 220 does not allow the Court to order such an interview; and at oral argument Defendant's counsel declined to say whether Flats would agree to such an interview. Under the circumstances, Claiborne has no option but to request information responsive to the seven requests. The seven requests are not being pursued as "a way to circumvent discovery proceedings." *See Highland Select Equity Fund, Ltd. P'ship v. Motient Corp.*, 906 A.2d 156, 165 (Del. Ch. 2006). The seven requests do not constitute an audit, and are "narrowly tailor[ed]" to Fournier's need to value his shares in Flats, while balancing the interests of the shareholder and the corporation. *See Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 681 A.2d 1026, 1035 (Del. 1996). The seven requests are not exceptionally broad, as were the twenty-five pages of rambling requests

9

denied in *Highlands Select*, 906 A.2d at 160-162. To the contrary, the seven requests have the "rifled precision" appropriate to a Section 220 inspection request.[5] *See Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 570 (Del. 1997). As a result, the Court finds inspection of the information and documents sought in response to the seven requests is essential and necessary to Claiborne's ability to reliably value Flats, and within the permissible scope of a Section 220 inspection.

Section 220 provides that the Court in its discretion can prescribe conditions with reference to inspection. 8 *Del. C.* § 220(c). Having found that Fournier is legally entitled to inspection pursuant to Request Nos. 7, 27, 29, 36, 39, 40 and 41 as numbered in Ms. Claiborne's affidavit, and given the length of time Fournier has been waiting to inspect the information and documents, the Court in its discretion further orders as follows:

1. Flats shall prepare, ready, assemble, and make available for inspection by Fournier and/or his counsel all records responsive to Request Nos. 7, 27, 29, 36, 39, 40, and 41 by the close of business on November 30, 2018.

2. The records produced shall be organized in a readily accessible fashion—in particular, the records shall be tabbed to respond to each individual request as numbered in Ms. Claiborne's affidavit. For example, all records responsive to Request No. 7 shall be organized and tabbed as responsive to Request No. 7.

---

[5] Indeed, Flats' objection that the seven requests are too "granular" runs directly counter to the Section 220 case law which emphasizes that Section 220 requests should be targeted and not sweeping.

10

3. Flats shall take all measures to ensure that it meets the Court's deadline including retaining additional staff if necessary. No extension of the Court's deadline shall be permitted except under extraordinary circumstances.

4. After reviewing the records produced by Flats, Fournier, though his counsel or other designated representative, shall inform Flat's counsel which record he wishes to have copied, including that he wishes all records to be copied. Flats is to make such copies without any further request or delay.

5. Flats shall bear all costs of complying with this Order and shall not pass any costs, including, but not limited to, any copying costs, along to Fournier.

6. The Court will not entertain any further objection from Flats to producing the records responsive to Request Nos. 7, 27, 29, 36, 39, 40, and 41.

7. Flats may not designate any of the records produced as confidential without Fournier's consent.

8. Failure to strictly comply with this Order will expose Flats and its officers, managers, and directors personally to being held in contempt by this Court and to the full exercise of this Court's contempt powers.

Should Flats fail to comply with this Order in any respect, Fournier is directed to notify the Court of that fact promptly, in response to which the Court will promptly schedule a show cause hearing.

Fournier seeks an award of attorney fees. Attorney fees are available under Section 220, but are not ordinarily awarded without a showing of bad faith. Fournier's wait has been unreasonably long in this case, but Fournier has not established bad faith. The Court declines to make an award of attorney fees.

11

Finally, the Court notes the mediator has filed a Report of ADR Conference, indicating that the issues in the consolidated Pen Bay case (originally BCD-CV-17-38) have been fully resolved. Accordingly, all aspects of this consolidated case are now fully resolved.

The Clerk shall incorporate this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.

October 15, 2018.

_____
Michael A. Duddy
Judge, Business and Consumer Docket

Entered on the Docket: _10-16-18_
Copies sent via Mail ___ Electronically ✓

12

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   BUSINESS AND CONSUMER COURT
                                                  LOCATION: PORTLAND
                                                  DOCKET NO. BCD-CV-2017-37 ✓

BRIAN J. FOURNIER,                        )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )         ORDER ON PLAINTIFF'S
                                          )         MOTION TO DISQUALIFY
FLATS INDUSTRIAL, INC, et al.             )         COUNSEL FOR DEFENDANTS
                                          )
            Defendants,                   )


Plaintiff Brian J. Fournier ("Brian") has moved this Court to disqualify the law firm Verrill

Dana, LLP ("Verrill Dana") as counsel for Defendants Douglas A. Fournier, Patrick M. Fournier,

and Beth B. Fournier (collectively the "Individual Defendants") and Defendant Penobscot Bay

Tractor Tug Co., Inc. ("Pen Bay") (collectively "Defendants"). Defendants oppose the motion. A

hearing was held on the motion on November 27, 2017 in Cumberland County Superior Court.

Attorney Brendan P. Rielly appeared for Brian and Attorneys Brett R. Leland and Harold J.

Friedman appeared for Defendants.

## FACTUAL BACKGROUND[1]

Pen Bay operates tugboats in and around Bucksport and Searsport, Maine with an office in

Belfast, Maine. (Complaint ¶ 9.) During his lifetime, Arthur J. Fournier ("Arthur") was the sole

owner, director, and manager of Pen Bay. (Complaint ¶¶ 9, 10.) Arthur passed away on November

16, 2013, and his will distributed ownership of Pen Bay equally between his three children: Brian,

---

[1] The facts described in this section are taken from Brian's operative pleading in this matter, the Amended and Verified Complaint (the "Complaint") filed July 5, 2017 in the Cumberland County Superior Court prior to transfer here to the Business and Consumer Court. The Court includes these facts merely to contextualize the instant motion. Nothing in this section should be construed as a finding of fact by the Court.

1

Douglas Fournier ("Douglas"), and Patrick Fournier ("Patrick"). (Complaint ¶¶ 9, 23.) Arthur's will named his wife, Beth Fournier ("Beth"), as personal representative of his estate. (Complaint ¶ 15.) Beth was appointed Special Administrator by the Cumberland County Probate Court and used her authority as such to appoint herself to Pen Bay's board and then name herself President and Treasurer of Pen Bay. (Complaint ¶¶ 18, 20.) Sometime thereafter Beth appointed Douglas and Patrick to Pen Bay's board. (Complaint ¶ 22.) Brian is a shareholder, but neither a director nor manager, of Pen Bay.

Pen Bay is now owned in equal shares by Brian, Douglas, and Patrick. Beth remains Pen Bay's President and Treasurer. Brian alleges that the Individual Defendants control and manage Pen Bay, and brings several direct claims against all Defendants arising out of the Individual Defendants' alleged failure to share Pen Bay's business records with him, along with alleged mismanagement and self-dealing by the Individual Defendants in their operation and management of Pen Bay. Brian also brings a derivative claim on behalf of Pen Bay against the Individual Defendants.

Verrill Dana had previously represented Beth individually in matters related to the probate of Arthur's estate. *See generally In re Estate of Arthur J. Fournier, Jr.*, Cum. Cty. Prob. Ct. 2013 -1627 (*Mazziotti, J.*); *In re Nix's Mate Equip. Trust*, Cum. Cty. Prob. Ct. 2016-0583 (*Mazziotti, J.*). At a shareholder meeting, acting in their capacity as directors, the Individual Defendants consented on behalf of Pen Bay to Verrill Dana's dual representation of Pen Bay and themselves individually. (Complaint ¶¶ 125-26.) Brian objected to the dual representation and did not consent. (Complaint ¶ 122, 127.) Notwithstanding his objection, Brian was outvoted by Douglas and Patrick, and Verrill Dana is now counsel for all Defendants: Pen Bay and the Individual Defendants. Brian now brings the instant motion to disqualify Verrill Dana as counsel for not only

2

Pen Bay, but each of the Individual Defendants as well.

## STANDARD OF REVIEW

Our Law Court is highly deferential to a trial court's decision whether disqualification is proper. *Estate of Markheim v. Markheim*, 2008 ME 138, ¶ 27, 957 A.2d 56. This Court must be "mindful that motions for disqualification are capable of being abused for tactical purposes, and justifiably wary of this type of strategic maneuvering." *Morin v. Maine Educ. Assoc'n*, 2010 ME 36, ¶ 8, 993 A.2d 1097 (quotations and omissions omitted). Therefore, disqualification is appropriate only when the moving party produces evidence supporting two findings: (1) "that continued representation of the nonmoving party by that party's chosen attorney results in an affirmative violation of an ethical rule" and (2) "that continued representation by the attorney would result in actual prejudice to the party seeking that attorney's disqualification." *Id.* ¶¶ 9-10. The moving party must point to specific, identifiable harm she will suffer in the litigation by opposing counsel's continued representation; mere general allegations are insufficient. *Id.* ¶ 10.

## DISCUSSION

Brian alleges that Verrill Dana's concurrent representation of Pen Bay and the Individual Defendants violates many of the Maine Rules of Professional Conduct, including Rules 1.6, 1.7, 1.9, 1.13. Defendants deny that Verrill Dana's dual representation violates any of the ethical rules and that any conflict stemming from Verrill Dana's concurrent representation of Pen Bay and the Individual Defendants has been resolved by consent.

The Court notes that Brian's motion presents a significant question regarding a lawyer's ethical duties in representing a closely-held corporation as well as its individual directors or managers when a minority shareholder purports to bring a derivative action on behalf of the corporation against those individuals. *See* M.R. Prof. Con. 1.13 cmt. (14). The problem is

3

compounded when, as here, there are no disinterested directors or managers and the directorship-management forms an allied bloc of majority shareholders, which will inevitably conclude that joint representation is not counter to the corporation's interests and consent to the joint representation. *See* Restatement (Third) of the Law Governing Lawyers, § 131 cmt. g. However, the Court need not determine whether Verrill Dana's continued representation of Pen Bay and the Individual Defendants would violate any ethical rules in order to decide the instant motion to disqualify counsel. Brian has failed to adduce evidence of actual prejudice he will suffer from Verrill Dana's continued representation of Defendants, and his motion therefore fails the second prong of the *Morin* test and must be **denied**.

At the outset, Brian questions whether the *Morin* test applies to this case. Brian points out that *Morin* involved different ethical rules, did not involve a derivative claim, and relied on the reasoning expounded in *Adam v. MacDonald Page & Co.*, 644 A.2d 461 (Me. 1994), which involved successive representations and held that the former client was required to show that the former attorney had actually acquired relevant, confidential information to be disqualified from representing the other side in a subsequent suit. *Id.* at 464-65. Regardless of *Adam*'s applicability to Brian's motion, the scope of *Morin*'s holding—that is, that it applies to all motions to disqualify counsel—is apparent from its plain language. *Morin*, 2010 ME 36, ¶¶ 9-10, 993 A.2d 1097. Furthermore, *Morin* is explicit that the actual prejudice requirement is grounded not in the specific rules at issue justifying the motion to disqualify, but rather to discourage the use of disqualification motions for strategic purposes and as an "obvious vehicle for abuse." *Id.* ¶¶ 8, 10 (citation omitted). Finally, the U.S. District Court for the District of Maine has consistently applied *Morin*'s actual prejudice requirement to motions to disqualify regardless of the ethical violations alleged by movants. *See, e.g., Concordia Partners, LLC v. Ward*, No. 212-cv-138-GZS, 2012 U.S. Dist.

4

LEXIS 109540 (D. Me. Aug. 6, 2012); *Doe v. Reg'l Sch. Unit No. 21*, No. 2:11-cv-25-DBH, 2013 U.S. Dist. LEXIS 16700 (D. Me. Feb. 7, 2013).

*Morin* itself shows that the movant bears a heavy burden in demonstrating actual prejudice. In that case, an employee and her counsel shared confidential information with an attorney conducting an "independent investigation" because they were told the investigating attorney did not represent the employer, and they were not aware that the attorney's firm would later represent the employer in defending against the employee's discrimination suit. *Id.* ¶¶ 3-6. Morin and her counsel testified that they disclosed litigation and settlement strategy to the other attorney and were generally unguarded during the investigation based on his assurances. *Id.* ¶ 12. Nonetheless, the Law Court held that on these facts the employee "failed to point to any particular prejudice she has suffered or will suffer." *Id. See also Concordia Partners, LLC*, 2012 U.S. Dist. LEXIS 109540 at *21-22 (finding no actual prejudice where attorney at law firm did significant work for an opposing party in prior litigation).

Here, Brian's claims of actual prejudice are thinner than the employee's in *Morin*. Brian first alleges that Pen Bay is "apparently" paying for the legal representation of the Individual Defendants. (Brian Fournier Aff. ¶ 10.) Second, Brian claims that without independent counsel for Pen Bay, there is "no hope of any investigation into the corporate wrongdoings" of the individual Defendants. (Pl.'s Mot. at 8-9.) Both sides urge this Court to explore these allegations and determine their truth to decide Brian's motion, but such an inquiry is unnecessary here. *Morin* and the cases decided since indicate that the movant must do more than point to sworn allegations to substantiate a showing of prejudice and, furthermore, that even if true, the prejudice Brian alleges is inadequate to support disqualification in this case. *See Morin*, 2010 ME 36, ¶ 11, 993 A.2d 1097; *Concordia Partners,* 2012 U.S. Dist. LEXIS 109540 *21-22; *Reg'l Sch. Unit No. 21*, 2013 U.S.

5

Dist. LEXIS 16700 *36-37.

In essence, Brian urges this Court to reject *Morin* in favor of the "modern view . . . that it is generally improper due to conflict of interests for counsel to attempt to represent the corporation . . . while also representing the individuals charged with harming the corporation . . . ." 13 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 6025 at 442 (perm. ed. rev. vol. 1991). Brian cites to several cases in other jurisdictions as persuasive authority adopting this modern trend, and particularly relies on *Stepack ex rel. Southern Co. v. Addison*, 20 F.3d 398 (11th Cir. 1994). The Court has reviewed *Stepack* and the other cases cited, and finds that they are generally factually distinguishable from the motion at bar. *Stepack* involved a large public corporation with separate management than those accused of misconduct. In contrast, there is no management of Pen Bay other than Beth, Douglas, and Patrick. The other cases similarly discuss large public corporations, and the rules developed by courts in other jurisdictions to handle motions to disqualify in derivative actions brought on behalf of such corporations simply do not fit when applied to a small, closely-held corporation subject to Maine law's disqualification rules. *See Morin*, 2010 ME 36, ¶¶ 9-10, 993 A.2d 1097. This Court thus declines to apply the "modern view," and instead follows the established Maine Law Court precedent discussed *supra*. *See id.*

### CONCLUSION

By reason of the foregoing IT IS HEREBY ORDERED:

> That Plaintiff Brian J. Fournier's motion to disqualify counsel for defendants be **DENIED**.

> The Clerk is instructed to enter this Order on the docket for this case, by incorporating it be reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: December **4**, 2017

_____
Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 12-4-17
Copies sent via Mail ___ Electronically ✓